**Philip F. WIERSTAK,
Plaintiff, Appellee**

v.

**James W. HEFFERNAN,
Defendant, Appellant.**

**Philip F. WIERSTAK,
Plaintiff, Appellee,**

v.

**James W. HEFFERNAN, et al.,
Defendants, Appellees,**

**City of Worcester, Defendant,
Appellant.**

Nos. 85–1643, 85–1644.

United States Court of Appeals,
First Circuit.

Heard Feb. 5, 1986.

Decided May 2, 1986.

As Amended May 14, 1986.

Edward P. Reardon with whom Austin M. Joyce and Reardon & Reardon, Worcester, Mass., were on brief, for James W. Heffernan.

James T. Bergin, Asst. City Solicitor, Worcester, Mass., for City of Worcester.

Frederick U. Fierst with whom Kenneth P. Neiman and Fierst & Neiman, Northampton, Mass., was on brief, for Philip F. Wierstak.

Before COFFIN and ALDRICH, Circuit Judges, and PETTINE,* Senior District Judge.

PETTINE, Senior District Judge.

This case stems from a civil rights action brought by plaintiff-appellee Philip F. Wierstak, [Wierstak] pursuant to 42 U.S.C. §§ 1983 and 1988 for police brutality occurring during his arrest by defendant-appellant James W. Heffernan [Heffernan] and another Worcester City officer. In addition to pendent state law claims for assault and battery, intentional infliction of mental distress, and gross negligence against the officers, the complaint included a claim for a civil rights violation against defendant-appellant City of Worcester [Worcester] for its deliberate indifference to the constitutional rights of its residents and visitors by the hiring, supervising, and training of its police department. After a jury trial, a verdict was returned against Heffernan for civil rights violations and assault and battery, and against Worcester for civil rights violations. The jury assessed damages in the amount of $40,000 and awarded no punitive damages. No verdict was returned against the other officer, Anthony J. Giustino [Giustino]. Here, defendants-appellants appeal the judgment and the denial of their motions for directed verdict, judgment notwithstanding the verdict and for new trial. They base their appeal on several grounds, each of which we reject. The positions urged on appeal are:

1. That the district court committed prejudicial error by precluding the admission of the plaintiff's prior convictions.

2. That the district court committed prejudicial error by precluding evidence of the earlier break-in and the transfer of an object between Wierstak and his sister Mooney.

3. That the district court committed prejudicial error by qualifying a Professor Shubert as an expert and permitting him to testify as to the unreasonableness of Heffernan's conduct.

4. That the district court improperly denied Heffernan's motion for judgment notwithstanding the verdict.

5. That the district court abused its discretion in denying Heffernan's motion for new trial.

6. That the district court improperly denied Worcester's motions for directed verdict, judgment notwithstanding the verdict, and new trial.

A brief synopsis of the facts surrounding the case is necessary before these issues can be addressed. On Thursday, April 8, 1982, Officers Heffernan and Giustino were working their regular shift for the City of Worcester Police Department. Heffernan was assigned to the plain clothes burglary task force and Giustino to the patrol division. Heffernan was in an unmarked Toyota sedan that the police department had rented for undercover work. Giustino was in a car equipped with the usual police markings. . Heffernan was looking for Wierstak in connection with a break-in earlier that day at 185 Country

* Of the District of Rhode Island, sitting by designation.

Club Boulevard in Worcester. Heffernan had received a transmission on his hand-held radio that a witness to the break-in had positively identified Wierstak as the perpetrator and that the vehicle used in the break-in was one belonging to Wierstak. Heffernan was visiting some places Wierstak was known to frequent when he observed Wierstak's blue Pinto being driven by Wierstak's sister, Mooney. He saw the vehicle drive into the parking lot of an A.M./P.M. Store and gas station. He stationed himself in a parking lot across Lincoln Street and kept the Pinto under observation. Shortly thereafter, Wierstak arrived in the same parking lot driving a brown Oldsmobile registered to his sister. The pair exchanged something through the windows of the cars and Wierstak then left the parking lot and traveled down a two-lane high speed road in excess of the speed limit. Heffernan followed Wierstak and radioed the suspect's location and direction. A high speed chase ensued with Heffernan and Giustino in pursuit. At some point Wierstak lost control of the Oldsmobile and collided with a snowbank. Heffernan's car skidded on the snow straight into Wierstak's right rear side, rendering the Toyota undrivable. Heffernan left his car, drew his service revolver, transferred it to his left hand and reached into his car for his radio. As he did so, Wierstak began to run and Heffernan pursued him. At this time several witnesses arrived on the scene. Heffernan shouted to Wierstak as he ran after him, gradually closing the distance between them. Soon Heffernan was close enough to reach out and punch Wierstak between the shoulder blades with his right hand which held the radio, knocking Wierstak off balance and sending him over the snowbank onto the sidewalk. Heffernan jumped over the snow bank and an altercation between them ensued. Giustino then arrived on foot. He and Heffernan managed to handcuff Wierstak and lift him to his feet. Wierstak had several cuts and was bleeding. Heffernan radioed for a police wagon to transport Wierstak and the three walked back toward the Oldsmobile, Toyota and cruiser. Before they reached that area, the wagon arrived and transported Wierstak to Worcester City Hospital for treatment of his injuries.

Wierstak testified that he thought the Toyota, which was unmarked, belonged to someone to whom he owed money for drugs and that he was unaware that Heffernan was a police officer. He maintained that as he was being pursued, Heffernan yelled "Stop of I'll shoot you in the back!" several times, that Heffernan jumped on top of him when he was only semi-conscious, and that after he was handcuffed Heffernan struck him repeatedly about the head, neck and shoulders with his revolver. Both sides presented eyewitness testimony as to what they believed transpired.

### (1) *Prior Convictions*

Defendants-appellants argue, as grounds for appeal, that the district court committed prejudicial error by precluding the admission of the plaintiff's prior convictions. Over the objection of the defendants, the trial judge excluded evidence of Wierstak's 1971 convictions for breaking, entering, and larceny in the nighttime, and possession of a harmful drug and his 1979 convictions for possession of a hypodermic needle and syringe and possession of a Class A controlled substance. The jury was however informed of Wierstak's 1981 conviction for possession of heroin, possession of hypodermic needles, attempted breaking and entering in the daytime (twice), larceny over $100 (twice) and possession of burglary tools. The jury was also informed that Wierstak was convicted of driving to endanger and of assault with a dangerous weapon on a police officer as a result of this incident. The jury was told, as well, that Wierstak was a drug user and heroin addict from 1978–1982 and that he owed money to heroin dealers in Worcester.

■ As to the 1971 convictions, we agree with the trial court that exclusion was appropriate. Rule 609(b) of the Federal Rules of Evidence [FRE] provides for exclusion of evidence of prior convictions over ten years old for impeachment purposes. The rule provides:

[E]vidence of conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from confinement imposed for that conviction, whichever is the later date, unless the Court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect.

Wierstak's 1971 convictions fall squarely within the words and policy of the rule. These crimes, crimes of theft, stealth, and drug use, lack probative value of showing a propensity to lie on the stand. See *United States v. Glenn*, 667 F.2d 1269 (9th Cir. 1982); *United States v. Hastings*, 577 F.2d 38, 41 (8th Cir.1978). Defendants-appellants have demonstrated no compelling reason why Wierstak's 1971 convictions should be admitted; their argument rests solely on the fact that credibility of the witness was an essential element of the case. While Wierstak's credibility was indeed crucial, there was sufficient evidence before the jury, in the form of the 1981 convictions, that Wierstak had committed crimes and used drugs in the past. The prejudice that would have resulted by allowing evidence of these past convictions certainly outweighed any conceivable probative value of the information, and exclusion was proper.

■ As to the 1979 conviction, exclusion was also proper. FRE 403 states:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence.

The trial judge correctly found that the potential for prejudicing plaintiff by introduction of his convictions was demonstrably greater than the potential probative value. Convictions for possession of a syringe and hypodermic needle and possession of heroin are not particularly probative as to veracity and are unquestionably highly prejudicial. Defendants-appellant's ar-

gument that Rule 609 mandates admission of the convictions since this is a civil, not criminal, trial is unpersuasive; the Rule 403 balancing test was certainly appropriate here, and the judge did not abuse his discretion in applying the test.

■ Even were this Court persuaded that the lower court should have admitted the 1971 or 1979 convictions for impeachment purposes, failure to do so would be harmless error. The jury was informed of Wierstak's 1981 convictions and his convictions related to this incident. The jury was also aware that he was a drug user and heroin addict from 1978 through 1982 and that he owed a substantial sum of money to heroin dealers. Because of the similarity to the included 1981 convictions, the excluded convictions would not have assisted the jury to any great degree in determining credibility. This case was clearly not decided based on any illusions as to the plaintiff's moral character.

(2) *Earlier Break-in and Transfer Between Wierstak and Mooney*

■ Defendants argue, pursuant to FRE 404(b) and 403, that evidence pertaining to the plaintiff's involvement in a house-break and drug transaction on the day of the incident should have been admitted. Under Rule 404(b) evidence of other crimes, wrongs, or acts may be included into evidence to show proof of motive; defendants urge that this evidence should have been admitted to show the state of mind of the parties—i.e. that Wierstak had a motive for resisting arrest and that Heffernan was justified in maintaining pursuit. What defendants neglect to consider, however, is that Rule 404(b) notwithstanding, in order for this evidence to be properly admissible, a determination must be made of whether the danger of undue prejudice outweighs the probative value of the evidence. In this case, there was both a stipulation and testimony that Heffernan had probable cause to pursue and arrest plaintiff for an alleged house-break on the day of the incident, even though Wierstak was subsequently acquitted on the breaking and en-

tering charge. This evidence was certainly sufficient for the jury to have inferred a motive for the officer to have pursued plaintiff and to demonstrate why he may have fled. As to the exchange between Wierstak and Mooney, evidence of plaintiff's involvement in a drug transaction, for which he was never charged, would have added nothing to plaintiff's motive to resist or to Heffernan's pursuit of him. Additionally, such evidence would have put a collateral, irrelevant, prejudicial issue before the jury. Contrary to the defendants' contention, the trial judge acted properly as to the exclusion of this evidence and did not abuse his discretion.

### (3) *Professor Schubert's Testimony*

■ The defendant claims that the district court committed prejudicial error by qualifying Professor Schubert as an expert and permitting him to testify as to the unreasonableness of Heffernan's conduct. The crux of this argument is that Professor Schubert was not qualified under the terms of Rule 702 since his experience and education lay in the administrative area of police work rather than the actual mechanics, and that thus he could shed no light on the subject. Admission of expert testimony is a matter for the trial court's discretion and is subject to reversal only if clearly erroneous. *Garbincius v. Boston Edison Co.*, 621 F.2d 1171, 1174 (1st Cir.1980). No such error existed in this case. The trial court judge could properly have found that Professor Schubert was in a position to enlighten the jury on the reasonableness of Heffernan's conduct, and thus qualified to serve as an expert under Rule 702.

### (4) *The Motion for Judgment Notwithstanding the Verdict*

■ Following the entry of judgment in accordance with the jury verdict, Heffernan timely renewed his motion for directed verdict made at the close of the evidence by filing a motion for judgment notwithstanding the verdict. The motion was denied and the defendant alleges that the denial was improper. We disagree. A motion for judgment notwithstanding the verdict tests the sufficiency of the evidence to support the jury's verdict. In ruling on such a motion, however, the court may not substitute its judgment for that of the jury on the weight of the evidence or the credibility of the witnesses. *Hubbard v. Faros Fisheries, Inc.*, 626 F.2d 196, 199 (1st Cir.1980). In this instance there was ample evidence placed before the jury, to be believed or discounted, that Heffernan used excessive force to effectuate the arrest. Wierstak and three eyewitnesses testified that Heffernan struck the plaintiff repeatedly with his service revolver as Wierstak lay motionless and nonresisting on the ground. While Wierstak's treating physician testified that plaintiff's injuries were inconsistent with being struck repeatedly with a revolver, it was within the jury's province to accept the plaintiff's version and reject the defendant's, especially in view of the inordinate time that transpired before Wierstak received treatment. There was sufficient evidence from which the jury could conclude that Heffernan acted improperly, and the denial of defendant's motion for judgment notwithstanding the verdict was entirely proper.

### (5) *The Motion for New Trial*

After entry of judgment in accordance with the jury verdict, Heffernan timely moved for a new trial in conjunction with his motion for judgment notwithstanding the verdict. The motion was denied by the district court, which defendant charges as an abuse of discretion. Defendant believes he is entitled to a new trial for many reasons, none of which have any merit. As to his contention that the verdict was against the clear weight of the evidence, we plainly disagree; as discussed above, sufficient evidence was presented by Wierstak to sustain a verdict.

■ As to the defendant's contention that the damage award is excessive, we do not agree. While Wierstak's medical expenses were relatively minor, he complained of recurring headaches, blurred vision, aches and pains, bruises and lacera-

tions as a result of the incident. While there was testimony from Wierstak's treating physician that the injuries might not be related to the incident, but rather plaintiff's drug use, the jury could have found that a causal relationship did in fact exist. The award of $40,000 compensatory damages is not so high as to shock the conscience.

We reject the argument that the verdict should be set aside because it represents a clear compromise and is inconsistent with the evidence. No such compromise is evident here. That Giustino was acquitted and that no punitive damages were assessed does not mean that Heffernan might not have acted with excessive force. Evidently, the jury found that Heffernan acted unlawfully and excessively, though perhaps not with malice.

### (6) *Municipal Liability*

The City of Worcester claims that the district court committed error by failing to grant its motion for directed verdict, judgment notwithstanding the verdict, and alternative motion for new trial. The city's basic contention is that the plaintiff failed to prove a pattern of police misconduct, a general condition of police misbehavior, or a system of inadequate training and supervision sufficient to find it liable for violating the plaintiff's civil rights. We find the city's argument without merit.

We have only recently considered the issue of municipal liability under 42 U.S.C. § 1983 in *Kibbe v. City of Springfield,* 777 F.2d 801 (1st Cir.1985), *cert. granted,* —— U.S. ——, 106 S.Ct. 1374, 89 L.Ed.2d 600.

It is by now axiomatic that § 1983 liability may not be imposed upon a municipality simply on the basis of respondeat superior, but it must instead be premised on a finding that the "injuries [were inflicted pursuant to government 'policy or custom],'" *City of Oklahoma City v. Tuttle,* —— U.S. ——, 105 S.Ct. 2427, 2429, 85 L.Ed.2d 791 (1985); *Monell v. Department of Social Services,* 436 U.S. 658, 694 and n. 58, 98 S.Ct. 2018, 2031 and n. 58, 56 L.Ed.2d 611 (1978);

*Voutour v. Vitale,* 761 F.2d 812, 819–20 (1st Cir.1985).... A number of cases, including this court's recent *Voutour v. Vitale,* have accepted "inadequate training" as an actionable municipal policy or custom. *Marchese v. Lucas,* 758 F.2d 181, 188–89 (6th Cir.1985); *Wellington v. Daniels,* 717 F.2d 932, 936 (4th Cir.1983); *Herrera v. Valentine,* 653 F.2d 1220, 1224 (8th Cir.1981); *Owens v. Haas,* 601 F.2d 1242, 1246–47 (2nd Cir.), *cert. denied,* 444 U.S. 980, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979). Under this theory, the city is liable either for failing to implement a training program for its officers or for implementing a program that was grossly inadequate to prevent the type of harm suffered by the plaintiff. *Voutour v. Vitale,* 761 F.2d at 820 ("supervisor must demonstrate at least gross negligence amounting to deliberate indifference, and ... this conduct must be causally linked to the subordinate's violation of plaintiff's civil rights"); *Hays v. Jefferson County,* 668 F.2d 869, 874 (6th Cir.1982); *Wellington v. Daniels,* 717 F.2d at 936 (4th Cir.1983); see *Languirand v. Hayden,* 717 F.2d 220, 227–28 (5th Cir.1983).

*Id.* at 803. We also expressed our belief that "inadequate training" continued to be a viable theory of municipal liability even in light of the recent Supreme Court case, *City of Oklahoma City v. Tuttle,* —— U.S. ——, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985), because "it is possible to show an 'affirmative link,' *Tuttle,* 105 S.Ct. at 2436, between a policy of inadequate training and resort to harmful police methods." *Id.* at 804. And we interpreted *Tuttle* to hold only that a "'single incident'" of police misconduct does not, standing alone, permit an inference of a policy of "inadequate training." *Id.*

Assessing the evidence in this case as to whether the jury could properly find that the City of Worcester was grossly negligent in its training of police officers and that the negligence was the proximate cause of the plaintiff's injuries, we find the evidence to go well beyond the close case

of *Kibbe.* The jury, here, was not asked to infer grossly negligent conduct by the City of Worcester solely on the basis of Officer Heffernan's acts. Rather, there was direct evidence presented to the jury of the City of Worcester's failure to train and supervise its officers in a number of key areas of law enforcement and of its indifference to the circumstances of plaintiff's arrest and beating.

There was evidence that the City of Worcester failed to properly train its officers about policies on the use of firearms, high-speed chases, and road blocks. There was evidence that the City failed to instruct its officers on the amount of force that should be used in making an arrest and on the need to inspect injured prisoners as required by the Massachusetts injured prisoner statute, M.G.L. c. 276 § 33. And there was evidence that the City had no adequate procedure for the filing of reports as to any of the foregoing occurrences. All of these areas were implicated in the arrest in this case. The testimony further showed that the City never conducted any sort of investigation into the circumstances of the plaintiff's arrest nor his claims of brutality. Indeed, the chief of police blatantly admitted that he would not have wanted Officer Heffernan to have included in his arrest report the fact that he had struck the plaintiff three or four times. All of this evidence was then buttressed by the testimony of plaintiff's expert witness further identifying and linking the inadequacies in training with the injuries suffered here by the plaintiff.

The record in this case clearly shows that the jury verdict was a far cry from an instance of imposing municipal liability for a single bad incident on the part of a police officer. It is readily apparent to us on what basis the jury judged the City of Worcester liable for gross negligence. The City's motions for directed verdict, judgment notwithstanding the verdict, and new trial were properly denied.

Affirmed. Double costs against Heffernan.