Edward E. PINKHAM,
Plaintiff, Appellant,

v.

MAINE CENTRAL RAILROAD
COMPANY, Defendant,
Appellee.

No. 88–1932.

United States Court of Appeals,
First Circuit.

Heard Feb. 28, 1989.

Decided May 15, 1989.

Michael E. Saucier with whom Hunt, Thompson & Bowie, Portland, Me., was on brief, for plaintiff, appellant.

Glen L. Porter with whom Eaton, Peabody, Bradford & Veague, P.A., Bangor, Me., was on brief, for defendant, appellee.

Before BOWNES, Circuit Judge, COFFIN, Senior Circuit Judge, and FUSTE,[*] District Judge.

FUSTE, District Judge.

Plaintiff-appellant Edward Pinkham suffered personal injuries while attempting to dismount a locomotive owned by the defendant-appellee, Maine Central Railroad ("Maine Central"). Pinkham based his two-count suit for damages on the Federal Employers' Liability Act, 45 U.S.C. § 51 et seq., and on the Boiler Inspection Act, 45 U.S.C. § 23. After all the evidence the district court dismissed the latter claim and submitted the former to the jury, which, on the theory of comparative negligence, determined that appellant was 85% responsible for his injuries while appellee was 15% responsible. Thus, the jury awarded appellant $6,750 equalling 15% of the total

damages sustained by appellant, which were found to be $45,000. Pinkham on appeal asserts several errors and seeks a new trial on both of his theories. For the reasons discussed below, we AFFIRM the judgment of the district court.

I.

The evidence developed at trial reveals that in April of 1986 Pinkham was hired by Maine Central to do electrical maintenance on locomotives. His particular duties included cleaning, sweeping, washing, and inspecting, as well as mechanical and electrical repairs. At the time Pinkham was hired Maine Central was attempting to operate in the midst of a strike by its regular employees. Appellant's employment was to extend only through May 18, 1986. Pinkham passed a physical examination and a drug test and began to work out of Maine Central's Rigby Engine House in South Portland, Maine. The Rigby House was described as a "running repair yard" that serves as a temporary repair facility for all traffic north of Boston. There, Maine Central employees conduct temporary repairs preliminary to the work done at Maine Central's major repair facility in Waterville, Maine.

On May 16, 1986, Pinkham was working on Locomotive No. 337, which was undergoing its "1104–day" testing before heading to Waterville for further maintenance. According to the inspection sheet, Pinkham was required to remove alternator covers and do repairs. He testified that there was an extensive amount of grease and oil on the floor of the locomotive cab, a fact which remained unrebutted throughout the trial. After removing the alternator plates Pinkham proceeded, one plate in each hand, to walk forward down the steps, facing away from the locomotive, without using the existing handrails. A safety manual published by Maine Central states that the proper way to descend from a locomotive is to always use the handrails and to back down the steps while facing the engine. This manual, however, was never made available to Pinkham, nor was he instruct-

* Of the District of Puerto Rico, sitting by designation.

ed on how to properly dismount. Furthermore, the record reveals conflicting testimony at trial as to whether an improper method of dismounting such as was used by Pinkham was commonly employed by railroad personnel including Pinkham's superiors. In any event, Pinkham slipped on the second or third step of the stairs and fell backwards. Pinkham was able to complete the workday, but later that evening he developed pain in his back and neck and sought treatment at the Emergency Room of the Osteopathic Hospital in Portland, Maine. He continued to receive medical attention for the next two years and eventually received a medical diagnosis of a herniated disc caused by the fall. At least one of Pinkham's doctors has recommended constructive surgery. There was testimony to the effect that Pinkham lost wages due to the injury he sustained, although he did admit working at the Edgewater Motel and Lamoine Electric during the period from the date of his injury to the date of the trial.

## II.

Appellant claims a right to a new trial, first, based on the admission or exclusion of certain testimonial evidence by the district court judge. In particular, Pinkham claims it was error a) to admit evidence concerning his past convictions and incarceration for assault; b) to admit evidence relating to his past use of marijuana and participation in a detoxification program; and c) to exclude testimony by Robert A. Cotton concerning his observations of grease and oil in Maine Central's locomotive cabs. We will consider each claim separately.

### A.

During the cross-examination of Pinkham, defense counsel elicited information concerning various assault charges and a term of incarceration incurred by the appellant. These inquiries first took the form of questions and answers relating to the reason Pinkham was not claiming lost wages for certain periods of time following his accident, that reason being that he was incarcerated during the time in question.[1] The trial judge on his own motion ended this inquiry and warned the defense counsel at side bar not to continue this line of questioning. Defense counsel withdrew the questions and the court gave a curative instruction asking the jury to disregard the irrelevant information. Soon, however, the defense counsel embarked upon a series of questions regarding Pinkham's criminal convictions with the apparent aim of proving Pinkham had misrepresented his arrest record on his employment application.[2] After a late objection, the court held another side bar conference at which it decided to admit these questions for the purpose of impeachment. The trial judge then gave a second curative instruction[3] before allow-

---

1. The relevant questions by defense counsel and answers by Pinkham are as follows:

    Q. In prior answers filed in this particular case, you have stated that you are not claiming compensation for the period from May 16 to July 29, 1987. Why not?
    A. At that time, I was incarcerated for awhile.
    Q. Do I understand you were in prison?
    A. Yes.

    *    *    *    *    *    *

    Q. You were in prison for a period of incarceration?
    A. Three months or something like that....
    (Tr. Vol. II at 97).

2. Q. [a]nd you signed this application?
    A. Yes.
    Q. And, you made it out?
    A. Yes, sir.

    Q. And you indicated when asked "Have you ever been convicted of a crime?" and you said "Yes".
    A. Yes.
    Q. And what did you put down for an answer?
    A. Assault.
    Q. And the date?
    A. 1/17/86.
    Q. Is it not true, Mr. Pinkham, that you have also been convicted of assault on a police officer and aggravated assault?
    A. That was it.
    (Tr. Vol. II at 101–02).

3. Again, ladies and gentlemen of the jury, we have to depend on you to apply testimony in a particular way. I'm going to allow a series of questions at this point having to do with the Plaintiff's prior convictions. Those are admitted only because of the response in the application as to what his record of convictions

ing the defense counsel to elicit information concerning convictions of simple assault, aggravated assault, and assault on a police officer, each stemming from a separate incident. This line of questioning proceeded without further objection on the part of Pinkham's attorney and concluded with questions directed at Pinkham's imprisonment following his accident.

Plaintiff-appellant claims that evidence regarding his past convictions and incarceration was inadmissible under Fed.R.Evid. 609, which concerns the use of prior convictions. Because none of the crimes of which Pinkham was convicted "involved dishonesty or false statement" within the meaning of Fed.R.Evid. 609(a)(2), the test to be applied under Rule 609 is that of subsection (a)(1), which requires the court to balance the probative value with the possible prejudicial effect when admitting evidence of convictions "punishable by ... imprisonment in excess of one year." [4] Fed.R.Evid. 609(a)(1). Appellant claims that no such balancing, if it took place at all, could result in a finding of admissibility. This argument, however, is misplaced. In the past we have expressed doubt as to whether Fed.R.Evid. 609(a)(1) was intended to exclude the prior criminal convictions of a party to a civil, as opposed to a criminal, case. In *Linskey v. Hecker*, 753 F.2d 199 (1st Cir.1985), citing the legislative history of Rule 609, we observed that "[e]mbarrassment of witnesses and prejudice *to parties other than criminal defendants* were thought insufficient reasons to exclude such evidence, which Congress considered highly probative of a witness's credibility."

*Id.* at 201 (emphasis supplied).[5] Moreover, the view that Rule 609(a)(1) is inapplicable to testimony regarding a civil plaintiff has been endorsed by a number of other courts. *See Jones v. Board of Police Commissioners*, 844 F.2d 500, 504–05 (8th Cir.1988); *Campbell v. Greer*, 831 F.2d 700, 704 (7th Cir.1987); *Diggs v. Lyons*, 741 F.2d 577, 582 (3rd Cir.1984); *contra Petty v. Ideco, Div. of Dresser Industries, Inc.*, 761 F.2d 1146, 1152 (5th Cir.1985).

Nevertheless, appellant asserts that even if Rule 609(a)(1) does not apply to this action, the district court could have excluded this testimony as unduly prejudicial under Rule 403.[6] Indeed, in *Wierstak v. Heffernan*, 789 F.2d 968 (1st Cir.1986), we rejected the view that evidence of prior convictions within the scope of Rule 609(a)(1) may *never* be excluded under Rule 403 on the basis of potential prejudice to a plaintiff in a civil case. *Id.* at 972. Here, however, even "if the district court could have excluded the evidence under Rule 403, the court did not abuse its discretion in declining to do so." *Linskey v. Hecker*, 753 F.2d at 202. This evidence was introduced in the context of ascertaining whether Pinkham misrepresented his criminal record on his employment application, hence its relevance to the witness' tendency for veracity. Moreover, although the trial judge engaged in no overt Rule 403 balancing, his earlier admonition to the defense counsel at side bar indicated his awareness of the possible prejudicial effects of this testimony. The court's warning, it must be remembered, occurred when

was, and they are admitted only for that purpose, and you are to use the evidence only for that purpose.
(Tr. Vol. II at 106).

4. One of Pinkham's three convictions mentioned at trial—simple assault—is punishable by imprisonment for less than one year and thus falls outside the confines of Rule 609(a)(1). However, even if the admission of a misdemeanor assault conviction was error, that error is considered harmless if we find, as we do, that admission of Pinkham's felony convictions was proper. Fed.R.Evid. 103(a); *Linskey v. Hecker*, 753 F.2d 199, 201 n. 2 (1st Cir.1985).

5. But see *Wierstak v. Heffernan*, 789 F.2d 968, 972 (1st Cir.1986). In *Wierstak* the court upheld

the trial court's exclusion of plaintiff's ten-year-old convictions under Fed.R.Evid. 609(b). As for the plaintiff's more recent convictions, the court found authority for their exclusion not under Rule 609(a)(1) but rather under Rule 403. *Id.*

6. Fed.R.Evid. 403 states:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

the defense counsel attempted to bring in this evidence in the inappropriate context of determining why Pinkham failed to ask for compensation for the period of his incarceration. Only after that context shifted, and it became clear that the evidence would be relevant to whether Pinkham had misrepresented his record on his application, did the trial judge determine that the convictions were relevant for the purpose of impeachment. Thus, the record indicates that the trial judge had both the probative and prejudicial factors in his mind when he made his ruling. Finally, the court took steps to limit the possible prejudicial impact of this evidence by giving two separate curative instructions to the jury. *See Linskey v. Hecker,* 753 F.2d 199, 202 (1st Cir.1985). Therefore, we cannot conclude that the district court abused its discretion by failing to exclude the evidence under Rule 403.

### B.

Appellant also claims error in the trial court's admission of a line of questioning pertaining to Pinkham's past marijuana use and his participation in a detoxification program at Blue Hill Memorial Hospital,[7] arguing that this evidence was not admissible under either Rule 404(b),[8] permitting evidence of other crimes, wrongs or bad acts for certain purposes, or under Rule 608(b),[9] which governs evidence of character in specific instances of conduct. The defendant in this case has made no effort to place the admission of this evidence within any of the specific justifications contemplated by Rule 404(b), nor, given the bulk of case law to the contrary, could it argue that evidence of a witness' drug involvement is generally admissible for impeachment purposes. *See Crimm v. Missouri Pacific R. Co.,* 750 F.2d 703, 707–08 (8th Cir.1984); *United States v. Marvin,* 720 F.2d 12, 14 (8th Cir.1983); *United States v. Reed,* 700 F.2d 638, 644 (11th Cir.1983); *United States v. Fortes,* 619 F.2d 108, 118 (1st Cir.1980).

We agree that the behavior of the defense counsel constituted overreaching

---

7. The specific testimony was presented to the jury as follows:

Q. Now, do I understand properly that part of the records from the Blue Hill Hospital that we are concerned with in this proceeding involved your involvement in a detoxification program?
A. Yes, it does.
Q. How long have you been involved in that program?
A. In the detox program?
Q. Yes.
A. I go to AA now. I went in there for detox because the doctors were giving me shots of demerol. I started having—they just filled me up with so much dope, and I was going to AA at this time, too ...

\*　\*　\*　\*　\*　\*

Q. And have you been involved in a detox program?
A. I went in there for detox. I have been involved in AA. I go to AA now.
Q. Do I understand that you were also involved in using other types of drugs, such as marijuana and illegal drugs?
A. Marijuana I smoked before, but that has since ceased.
Q. Since what?
A. Since when? Since I stopped taking medication for my neck. I would have taken anything to get rid of the pain that I was in before. Now, I just put ice on it and go to AA and pray for help.

(Tr. Vol. II at 282–304).

8. Fed.R.Evid. 404(b) provides in pertinent part:

Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

9. Fed.R.Evid. 608(b) provides that

[s]pecific instances of the conduct of a witness, for purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

The giving of testimony, whether by an accused or by any other witness, does not operate as a waiver of the accused's or the witness' privilege against self-incrimination when examined with respect to matters which relate only to credibility.

of some sort; however, at the same time we cannot ignore the fact that it occurred with the acquiescence of appellant's trial counsel. Although appellant now criticizes the trial court for failure to give a curative or limiting instruction at any time concerning the use of the testimony in question, his trial counsel did not object to the testimony nor did he request a curative or limiting instruction at any time during the course of the proceedings. Fed.R.Evid. 103(a)(1) precludes appellant from making these objections at this time. *United States v. Serrano*, 870 F.2d 1, 10 n. 9 (1st Cir.1989); *Allied Intern. v. Intern. Long-shoremen's Ass'n.*, 814 F.2d 32, 39–40 (1st Cir.), *cert. denied* — U.S. —, 108 S.Ct. 79, 98 L.Ed.2d 41 (1987). Nor does the admission of the testimony in question constitute plain error under Fed.R.Evid. 103(d). The plain error exception is to be used sparingly and in exceptional cases in order to prevent a clear miscarriage of justice. *Wilson v. Attaway*, 757 F.2d 1227 (11th Cir.1985); *Morreale v. Downing*, 630 F.2d 286, 290 (5th Cir.1980); Fed.R.Civ.P. 61. Here, the record does not indicate that this testimony resulted in substantial unfairness to the appellant. The jury had been presented evidence that shortly before his accident Pinkham had passed a drug test administered by the defendant, thus decreasing the likelihood of an improper inference that the accident was caused by any drug use on Pinkham's part. Moreover, and contrary to appellant's assertions, the record reveals substantial admissible evidence with which the jury could reach the decision that Pinkham was 85% responsible for his own injuries. Pinkham's case against Maine Central rests entirely on the existence of grease on the locomotive floor and on the failure of the defendant to instruct appellant how to safely dismount the locomotive. On the other hand, Pinkham admitted that he saw the grease, that he nevertheless dismounted the locomotive in what obviously was a careless and unsafe manner—carrying two heavy alternator covers and neglecting to use the handrails provided—and that the accident would not have happened but for his behavior. Given the foregoing, we cannot say that the jury's finding provides any indication that the introduction of the testimony in question was so prejudicial as to seriously affect the fairness or integrity of the proceedings. *U.S. v. Young*, 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985). If anything, it was harmless error under Fed.R.Civ.P. 61, and the trial court's failure to exclude it on its own motion did not offend substantial justice.

### C.

■ Pinkham next claims error in the exclusion of testimony from Robert A. Cotton concerning the grease and oil conditions on the floor of the cab of Locomotive No. 337.[10] Again, we disagree that the action taken by the trial court constitutes reversible error.

There is little doubt that the presence of oil or other foreign substances on equipment may be material to establishing defendant's liability under either a negligence or Boiler Inspection Act theory. *See e.g., Gowins v. Pennsylvania Railroad Co.*, 299 F.2d 431 (6th Cir.), *cert. denied* 371 U.S. 824, 83 S.Ct. 44, 9 L.Ed.2d 64 (1962);

---

**10.** Q. Where does this [an alternator cover similar to the one Pinkham was carrying at the time of his injury] come from, sir?
A. Up on the electrical part of the locomotive.
Q. And have you in your courses of mechanic worked in the area or that section?
A. They showed it to us and stuff but I didn't actually work right in there. That was the electrical part. I was on the engine part.
Q. When they showed it to you, what did you observe as to the actual condition as far as grease and oil is concerned?
Mr. Porter: Objection.
Court: Sustained.

(Tr. Vol. II at 151).

\* \* \* \* \* \*

Q. Did your job take you in the interior part of the locomotive or were you working on the outside always.
A. No, inside, inside the engine compartments and stuff.
Q. On the inside of the engine compartments can you tell us what is the condition or what's there on the inside of an engine compartment?
Mr. Porter: Objection.
Court: Sustained.
(Tr. Vol. II at 153).

*Calabritto v. New York, New Haven & Hartford Railroad Co.,* 287 F.2d 394 (2d Cir.), *cert. denied* 366 U.S. 928, 81 S.Ct. 1649, 6 L.Ed.2d 387 (1961). However, in this case the questions by appellant's counsel called for Mr. Cotton's observations regarding grease and oil conditions on locomotives in general, and the questions did not specifically relate to the condition of locomotive No. 337 on May 16, 1986. Therefore, we cannot say that the trial judge abused his discretion in determining that these questions were not probative of the condition of locomotive 337 and therefore inadmissible. Fed.R.Evid. 401 and 402.

■ Furthermore, even assuming that the trial judge erred in sustaining defendant's objections, any such error was harmless. The evidence at trial included substantial unrebutted testimony from Pinkham regarding his observations of oil and grease conditions before and at the time of his fall on May 16, 1986. Exclusion of evidence in a jury case constitutes harmless error if the evidence, even though properly admissible, is of a fact already established by other unrebutted evidence and may therefore be regarded as cumulative. *Petrocelli v. Gallison,* 679 F.2d 286, 292 (1st Cir.1982). Fed.R.Evid. 403. Here, Maine Central made no attempt to dispute Pinkham's claims of the existence of grease and oil in the locomotive cab. We therefore hold that the exclusion of this testimony constituted, at best, harmless error and did not affect substantial rights of the plaintiff. *DeVasto v. Faherty,* 658 F.2d 859, 863 (1st Cir.1981).

### III.

■ We now turn to Pinkham's claim that the trial court erred in directing a verdict for appellee on the Boiler Inspection Act theory. This act (45 U.S.C. § 23) provides:

It shall be unlawful for any carrier to use or permit to be used on its line any locomotive unless said locomotive, its boiler, tender and all parts and appurtenances thereof are in proper condition and safe to operate in the service to which the same are put, that the same may be employed in the active service of such carrier without unnecessary peril to life or limb, and unless said locomotive, its boiler, tender, and all parts and appurtenances thereof have been inspected from time to time ... and are able to withstand such test or tests as may be prescribed in the rules and regulations hereinafter provided for.

The district court found that Locomotive No. 337 on which Pinkham had been working at the time of his injury was not "in use" within the meaning of the Boiler Inspection Act. We agree, pointing out initially that whether a locomotive is "in use" within the purposes of this statute is a question of law for the trial court to decide and not a question of fact for the jury as appellant contends. *Steer v. Burlington Northern, Inc.,* 720 F.2d 975, 977 (8th Cir. 1983).

The evidence supports the district court's conclusion. Locomotive 337 had been taken out of active use and left in the Rigby Engine House to undergo the first stages of its "1104–day testing." Pinkham testified that his injury occurred shortly after he performed maintenance on the engine and that once his work was completed the engine would not be returned to active service but rather would be taken to Waterville, Maine for further attention. It is well established that locomotives being serviced in a place of repair are not "in use" within the meaning of the Boiler Inspection Act. *Steer v. Burlington Northern, Inc.,* 720 F.2d 975 (8th Cir.1983); *Estes v. Southern Pac. Transp. Co.,* 598 F.2d 1195 (10th Cir.1979); *Simpkins v. Baltimore & O.R. Co.,* 449 F.Supp. 613 (S.D.Ohio 1976). Moreover, "Congressional intent and the case law construing the statute clearly exclude those injuries directly resulting from the inspection, repair, or servicing of railroad equipment located at a maintenance facility." *Angell v. Chesapeake and O. Ry. Co.,* 618 F.2d 260, 262 (4th Cir.1980).

In spite of the above-stated principles, Pinkham attempts to put himself within the statute by advancing the novel theory that his injury was "directly related" to the

"use" of the locomotive insofar as the grease and oil build up allegedly contributing to his accident occurred while the locomotive was in service. We find this interpretation completely at odds with both the face of the statute and the above-cited case law, both of which indicate that the determinative factors are the location of the locomotive at the time of the injury and the activity of the injured party—not the genesis of any unsafe condition contributing to the injury. Therefore, we hold that the district court was not in error in concluding that the locomotive was not "in use" at the time Pinkham was injured and dismissing the Boiler Inspection Act claim accordingly.

## IV.

■ Pinkham next asserts error in the trial court's failure to specifically instruct the jury on its obligation to award damages for permanent impairment. The district court judge instructed the jury as follows:

[U]nder the ELA the Plaintiff, if he has sustained his burden of proof, may recover for:

\*      \*      \*      \*      \*      \*

3. Pain, suffering and mental anguish and impairment, if any, as you may reasonably find he is likely to endure in the future as a result of the injury.

(Tr. Vol. II at 296). Pinkham claims that failure to include the word "permanent" in these instructions resulted in the undervaluing of the finding of damages in this case.

In reviewing jury instructions on appeal, the question is not whether the instructions were faultless in every respect but whether the jury, concerning the instruction as a whole, was misled. *Aubin v. Fudala*, 782 F.2d 280, 284 (1st Cir.1983). Here, the trial court clearly advised the jury that it could award damages for such impairment as it might reasonably find Pinkham likely to endure in the future on an indefinite and unspecified basis. There is no indication that the jury was confused or misled by these clear instructions, and, indeed, it must be presumed that the jurors understood the instructions, followed them correctly, and based their verdict on the instructions. *Pittman v. Littlefield*, 438

F.2d 659, 662 (1st Cir.1971). Moreover, Pinkham's trial counsel failed to object to the instructions as given. Therefore, reversal in this case would be warranted only if the instructions as given amount to plain error. *Almonte v. Nat. Union Fire Ins. Co.*, 787 F.2d 763, 767 (1st Cir.1986). There is no indication in the record as a whole that the instruction as given was prejudicial in the sense of affecting substantial rights of the appellant. *Connors v. McNulty*, 697 F.2d 18, 20–21 (1st Cir.1983); *Fireman's Fund Am. Ins. v. Almacenes Miramar*, 649 F.2d 21, 29 (1st Cir.1981). We therefore find Pinkham's claim on this matter to be without merit.

## V.

Pinkham's final claim on appeal asserts error in the trial court's denial of his motion under Fed.R.Civ.P. 59 for a new trial on the ground that the jury's verdict was against the weight of the evidence. Appellant bases this argument, essentially, on a culmination of the errors asserted by him above, alleging in particular that the defense counsel engaged in misconduct by introducing discriminatory evidence and that the record does not support a finding that Pinkham was 85% negligent. Given that a motion for a new trial is directed to the sound discretion of the trial court, it is reversible only for abuse of that discretion. *Rios v. Empresas Lineas Maritimas Argentinas*, 575 F.2d 986, 990 (1st Cir.1978). In considering a motion for a new trial based upon an allegation that the verdict is against the weight of the evidence, a trial court's refusal to grant a new trial will be found to be an abuse of discretion only if the verdict was so clearly against the weight of the evidence as to constitute a manifest miscarriage of justice. *Id.* Here, we find that there was sufficient, if not substantial, evidence to support the jury's verdict. Moreover, although we believe defense counsel was overzealous and overbearing at trial in his pursuit of testimony of questionable relevancy, we do not, for the reasons expressed in Part II above, find that this misbehavior warrants rever-

sal. Therefore, appellant's claim is rejected.

The judgment of the district court is *affirmed.*