**Dougherty v. CSX Transportation Inc.**

*Patrick J. Donoghue* and *Mark F. McKenna,* for plaintiff.

*John Edward Wall, Anthony J. Rash* and *Brendan B. Kelly,* for defendant.

MOTTO, *P.J.,* April 30, 2010—Plaintiff, Edward Dougherty, has sued defendant, CSX Transportation Inc., (CSX), pursuant to the Federal Employer's Liability Act (FELA), 45 U.S.C. §§51-60, claiming that he was injured as a result of CSX's negligence and/or its violation of the Federal Locomotive Inspection Act (FLIA), 49 U.S.C. §20701. Now before the court are the cross motions of the parties for summary judgment wherein defendant has moved for partial summary judgment on plaintiff's FLIA claim and plaintiff has moved for partial summary judgement as to liability. For the reasons set forth below, the court will deny both motions.

On June 3, 2004 plaintiff was the engineer assigned to operate CB's locomotives 465 and 2745 on job E. 740-02 over the main line from Greenville, PA to New Castle, PA. Plaintiff and his conductor, Edward Hockey, reported to work at the New Castle station and were taxied to the Bessemer and Lake Erie Railroad (B&LE) Shenango Yard in Greenville were they were assigned to couple up their train in the Greenville yard, double to the main and then proceed over the main line to New Castle. Coupling involves the joining of two or more railcars together. Upon arrival in Greenville, CSX locomotive 465 was located on track #4 coupled to a second locomotive, CSX 2745, ready to be doubled to the cars on the main and then immediately depart the yard with Train E 740-02. Plaintiff proceeded to visually inspect

the conductor's side of the consist before boarding and entering the operating cab of the lead unit. Plaintiff contends it was while preparing to couple his train and leave for New Castle that he was injured when he slipped and fell on some loose coal and coal dust located on the front platform of locomotive 465, and that, when he fell, he injured his neck, shoulder, arm and back.

On February 3, 2006 plaintiff filed a two-count complaint against CSX in which plaintiff alleges that CSX was negligent in failing to provide him with a safe work place pursuant to the Federal Employers' Liability Act, 45 U.S.C. §51 et seq., and was liable under the Federal Locomotive Inspection Act, 49 U.S.C. §20701, for requiring him to work with a locomotive that was in a defective condition. The parties filed cross motions for summary judgment. CSX argues that plaintiff's FLIA claim should be dismissed because the FLIA applies only to locomotives that are "in use", and the locomotive was not "in use" when it allegedly caused the plaintiff's injury. Plaintiff has moved for partial summary judgment on the issue of liability under the Federal Locomotive Inspection Act, 49 U.S.C. §20701, and the Federal Employers' Liability Act, 45 U.S.C. §51 et seq.

Initially, it is noted that jurisdiction in FELA cases is concurrent in federal and state court. Although FELA cases adjudicated in state courts are subject to state procedural rules, the substantive law governing such cases is federal. 45 U.S.C. §56; *Harding v. Consolidated Rail Corporation,* 423 Pa. Super. 208, 620 A.2d 1185 (1993).

The purpose of the summary judgment rule is to eliminate cases prior to trial where a party cannot make

out a claim or defense after the relevant discovery has been completed. *Miller v. Sacred Heart Hospital,* 753 A.2d 829 (Pa. Super. 2000). Any party may move for summary judgment in whole or in part as a matter of law whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report or if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury. Pa.R.C.P. no. 1035.2.

Summary judgment may be granted only in cases where it is clear and free from doubt that there is no genuine issue as to any material fact and that the moving party is entitled to a summary judgment as a matter of law. *Kafando v. Erie Ceramic Arts Company,* 764 A.2d 59, 61 (Pa. Super. 2000) (citing *Rush v. Philadelphia Newspapers Inc.,* 732 A.2d 648, 650-51 (Pa. Super. 1999)). A material fact, for summary judgment purposes, is one that directly affects the outcome of the case. *Gerrow v. Shincor Silicones Inc.,* 756 A.2d 697 (Pa. Super. 2000).

When determining whether to grant a motion for summary judgment, the court must view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Hughes v. Seven Springs Farm Inc.,* 563 Pa. 501, 762 A.2d 339

(2000); *Dean v. PennDOT,* 561 Pa. 503, 751 A.2d 1130 (2000). Summary judgment is proper only when the uncontroverted allegations in the pleadings, depositions, answers to interrogatories, admissions of record, and submitted affidavits demonstrate that no genuine issue of material fact exists, and that the moving party is entitled to judgment as a matter of law. *P.J.S. v. Pennsylvania State Ethics Commission,* 555 Pa. 149, 153, 723 A.2d 174, 176 (1999); *Basile v. H & R Block,* 563 Pa. 359, 761 A.2d 1115 (2000); *Kuney v. Benjamin Franklin Clinic,* 751 A.2d 662 (Pa. Super. 2000); *Stevens Painton Corporation v. First State Insurance Company,* 746 A.2d 649 (Pa. Super. 2000).

Only when the facts are so clear that reasonable minds cannot differ, a trial court may properly enter summary judgment. *Basile, supra.* If there are no genuine issues of material fact in dispute or if the non-moving party has failed to state a prima facie case, summary judgment may be granted. *Dudley v. USX Corporation,* 414 Pa. Super. 160, 606 A.2d 916 (1992). Thus, a proper grant of summary judgment depends upon an evidentiary record that either (1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to make out a prima facie cause of action or defense. *Rauch v. Mike-Mayer,* 783 A.2d 815 (Pa. Super. 2001). The trial court must confine its inquiry when confronted with a motion for summary judgment to questions of whether material factual disputes exist. *Township of Bensalem v. Moore,* 152 Pa. Commw. 540, 620 A.2d 76 (1993). It is not the function of the court ruling on a motion for summary judgment to weigh evidence and to determine the truth of the matter. *Keenheel v. Pennsylvania Securities Commission,* 134 Pa. Commw. 494, 579 A.2d 1358 (1990).

Plaintiff has sued CSX under the FELA and the FLIA (formerly codified at 45 U.S.C. §23 as the Boiler Inspection Act), alleging that CSX failed to provide plaintiff with a safe place to work.

The FELA provides, in pertinent part:

"Every common carrier by railroad while engaging in commerce between any of the several states or territories . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, . . . resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment." 45 U.S.C. §51.

The statute departs from common-law negligence principles, making recovery easier to obtain than under a traditional negligence standard. *Sinkler v. Mo. Pac. R.R. Co.,* 356 U.S. 326, 329 (1958). The Supreme Court has noted the deliberately broad and remedial purpose of the statute, stating that the cost of human injury, an inescapable expense of railroading, must be borne by someone, and the FELA seeks to adjust that expense equitably between the worker and the carrier. *Id.* Courts have held that in light of the remedial purposes underlying the statute, the FELA is to be construed liberally in favor of the injured plaintiff. See *Green v. River Terminal RY. Co.,* 763 F.2d 805, 806 (6th Cir.1985). To establish liability under the FELA, a plaintiff must show: (1) circumstances which a reasonable person would foresee as creating a potential for harm; and (2) that the breach

played any part, even the slightest, in producing the injury. *McGinn v. Burlington N. R.R.Co.,* 102 F.3d 295, 300 (7th Cir.1996) (citing *Rogers v. Missouri Pacific R.R. Co.,* 352 U.S. 500, 506, 77 S.Ct. 443, 448 (1957)). To prove that an employer was negligent, a plaintiff must establish the common-law elements of negligence, including duty, breach, foreseeability, and causation. *Adams v. CSX Transp. Inc.,* 899 F.2d 536, 539 (6th Cir.1990) (quoting *Robert v. Consol. Rail Corp.,* 832 F.2d 3, 6 (1st Cir.1987)). Thus, while the state does not completely dispense with the requirement that a plaintiff establish a causal connection between the railroad's negligence and the injury, it sets a very low proximate cause standard. *Rogers,* 352 U.S. at 506; *Hines v. Consol. Rail Corp.,* 926 F.2d 262, 267 (3d Cir. 1991). Thus, as the Supreme Court has observed, the test is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. *Rogers v. Missouri Pacific R.R. Co.,* 352 U.S. 500, 506, 77 S.Ct. 443, 448 (1957). Under the FELA, an employee's contributory negligence will not bar him or her from obtaining relief and may only be considered to diminish the employee's recovery of damages in proportion to his or her fault. 45 U.S.C. § 53; *Norfolk Southern Ry. Co. v. Sorrell,* 549 U.S. 158, 167 (2007). The defense of assumption of risk is completely eliminated. 45 U.S.C. §54; *Tiller v. Atlantic Coast Line R. Co.,* 318 U.S. 54, 58 (1943).

Plaintiff also posits, however, that liability need not rest on such negligence where, as here, the locomotive was in a defective and unsafe condition, with coal and

coal debris located on the front platform where plaintiff was required to walk and work. Plaintiff bases Count II of the complaint on the Federal Locomotive Inspection Act, which provides in relevant part:

"A railroad carrier may use or allow to be used a locomotive or tender on its railroad line only when the locomotive or tender and its parts and appurtenances—

"(1) are in proper condition and safe to operate without unnecessary danger of personal injury;

"(2) have been inspected as required under this chapter and regulation prescribed by the secretary of transportation under this chapter; and

"(3) can withstand every test prescribed by the secretary under this chapter." 49 U.C.S. §20701.

Further, 49 C.F.R. §2229.119(c) states:

"Floors of cabs, passageways and compartments shall be kept free from oil, water, waste or any obstruction that creates a slipping, tripping or fire hazard. Floors shall be properly treated to provide secure footing." 49 C.F.R. §2229.119(c).

An employee injured as a result of a violation of the FLIA may bring an action under the FELA based upon the FLIA violation. *Lilly v. Grand Trunk W. R.R. Co.,* 317 U.S. 481, 485, 63 S.Ct. 347, 351 (1943) (analyzing the Boiler Inspection Act, the analogous predecessor statute to the FLIA). Negligence is not the basis for liability under the Act. Instead it imposes upon the carrier an absolute and continuing duty to maintain the locomotive, and all parts and appurtences thereof, in proper condition, and safe to operate without unnecessary

peril to life or limb. *Id.* (quoting *Southern Ry. Co. v. Lundsford,* 297 U.S. 398, 401, 56 S.Ct. 504, 506 (1936)). Thus, liability is absolute upon proof of an unsafe part and proximate cause and the FELA causation standard applies. *Green,* 763 F.2d at 810. An employer may violate the FLIA in either of two ways: (1) by breaching the broad duty to keep all parts and appurtenances of its locomotives in proper condition and safe to operate without unnecessary peril to life or limb; or (2) by failing to comply with the regulations issued by the Federal Railroad Administration. *McGinn,* 102 F.3d at 299.

Plaintiff additionally notes that strict liability under FELA attaches to the breach of regulations promulgated by the Federal Railroad Administration. *McGinn,* 102 F.3d at 298-99 (citing *Mosco v. Baltimore & Ohio R.R.,* 817 F.2d 1088, 1091 (4th Cir.), *cert denied,* 484 U.S. 851 (1987)). To establish such liability, plaintiff directs this court to safety regulation, 49 C.F.R. §2229-119(c) which states that floors of cabs, passageways and compartments shall be kept free from any obstruction that creates a slipping, tripping or fire hazard.

CSX contends that plaintiff cannot maintain a claim against the railroad under the FLIA because while a FLIA claim can, under certain circumstances, be actionable under the FELA, the duty imposed by the Act only attaches when a locomotive is "in use". *Lyle v. Atchison, Topeka & Santa Fe Railway Co.,* 177 F.2d 221 (7th Cir. 1949), *cert. denied,* 339 U.S. 913, 70 S.Ct. 574 (1950) (analyzing the FLIA'S predecessor, the Boiler Inspection Act); see *Pinkham v. Maine Cent. R.R.Co.,* 874 F.2d 875, 881 (1st Cir. 1989); see also, 49 U.S.C. §20701 et seq. The "in use" limitation gives the railroad an opportunity

to remedy hazardous conditions before strict liability attaches to claims made by injured workers. *Wright v. Ark. & Mo. R.R. Co.,* 574 F.3d 612 (8th Cir. 2009).

Whether a locomotive is "in use" under the Act is a question of law for the trial court to decide and not a question of fact for the jury. *Pinkham,* 874 F.2d at 881. Absolute liability under the Act arises only if the locomotive in question is "in use" at the time of the accident. *Crockett v. Long Island R.R.,* 65 F.3d 274, 277 (2nd Cir. 1995).

Congressional intent and the case law construing the statute clearly excludes those injuries directly resulting from the inspection, repair and servicing of railroad equipment located at a maintenance facility. *Angell v. Chesapeake and Ohio Ry. Co.,* 618 F.2d 260, 262 (4th Cir. 1980). In addressing the "in use" question, the court in *Pinkham* observed that the determinative factors are the location of the locomotive at the time of the injury and the activity of the injured party. *Pinkham,* 874 F.2d at 882. A locomotive may still be considered "in use" although it is motionless. See *Crockett,* 65 F.3d at 277.

Courts across the country have struggled to define exactly when a locomotive or railcar should be considered "in use" under the FLIA or its counterpart, the Federal Safety Appliance Act (FSAA). 49 U.S.C. §20301 et seq. In recent years, two primary approaches have emerged. In *Trinidad v Southern Pacific Trans. Co.,* 949 F.2d 187 (5th Cir. 1991), the Fifth Circuit established a bright line test, stating that a train is not "in use" until it has been inspected and released. *Trinidad,* 949 F.2d at 189. Alternatively, the Fourth Circuit has adopted a test

focusing on two primary factors which courts should consider: (1) where the train was located at the time of the accident, and (2) the activity of the injured party. *Phillips v. CSX Transp. Inc.,* 190 F.3d 285 (4th Cir. Md. 1999)(citing *Deans v. CSX Transp. Inc.,* 152 F.3d 326 (4th Cir. 1998)).

In *Angell,* the Fourth Circuit held that the locomotive was "in use" where the railway had okayed the locomotive for service. 618 F.2d at 262. The plaintiff, a machinist, was injured while the engine was on a service track and had been blue flagged. *Id.* at 261. At the time of the injury, all servicing, maintenance and inspection work had already been performed. *Id.* The court noted that Congress excluded injuries directly resulting from the inspection, repair, or servicing of railroad equipment located at a maintenance facility. *Id.* at 262. *Angell* involved an injury that occurred after inspection, repair, and servicing had been completed and during the uncoupling of a readied engine in preparation for moving it to a nearby track to pull a train a few hours later. *Id.* Because the engine was not in need of further repair or servicing and had been given the all clear by railway officials, it was "in use" and the statute applied despite the presence of blue flags. *Id.*

Subsequently, the Fourth Circuit revisited its "in use" analysis and adopted a multi-factor test to determine whether a train is "in use". *Deans,* 152 F.3d at 329; *Phillips, supra.* In *Deans,* the court held that to determine whether a train is "in use" for purposes of the FASS, the primary factors we consider are where the train was located at the time of the of the accident and the activity of the injured party. *Id.* The court expressly rejected any

analysis that would make a single factor, such as release from inspection, dispositive. The court ultimately held that the locomotive was "in use" because the train already had its engine coupled to it and was standing on a track in the rail yard in preparation for imminent departure— not in storage or waiting to be moved into a repair location. *Id.* at 330.

In interpreting the FLIA, a Federal District court recently distinguished in *Underhill v. CSX Transportation Inc.,* 2006 WL 1128619 (N.D. Ind. 2006) the difference between rail cars, under the FSAA, and rail vehicles-locomotives, under the FLIA. Citing the Supreme Court's holding in *United States v. Erie R.R. Co.,* 237 U.S. 402 (1915), the court stated it is still good law holding that safety requirements applicable to rail vehicles-locomotives do apply during switching operations, because switching operations necessarily involve the use of rail vehicles to push and pull cars.

In the case before the court there is no doubt that CSX locomotive 465 was being operated and run by plaintiff as he was preparing to double to his train and leave the yard. Defendant CSX sent the plaintiff out to board his locomotives to switch out railroad cars and make up his train. At the time of plaintiff's accident, his locomotive was beginning to switch and couple the rail cars in preparation for travel to New Castle. Plaintiff's locomotive was not blue flagged, not in the shop for inspection; it was in use, ready to leave the yard.

In *McGrath v. Consolidated Rail Corp.,* 136 F.3d 838 (1st Cir. 1998) a First Circuit court ruled that plaintiff's locomotive was "in use" under the terms of the Boiler

Inspection Act (now the FLIA) when he was in the process of inspecting it for imminent departure when he slipped and fell in the locomotives' cabin. In *McGrath,* plaintiff was a Conrail engineer employed as a shifter, or an engineer on short runs, who usually moved trains between local depots. He was responsible not only for operating the train, but also for attaching individual cars to the locomotive. Plaintiff was assigned to a locomotive 2013, which was coupled back-to-back with another locomotive. McGrath approached both locomotives, which had their engines running and boarded the second locomotive to cross over into locomotive number 2013. As soon as he entered the cabin of number 2013, McGrath started to walk toward the daily inspection card. In the cabin, McGrath lost his balance when he stepped on an acorn shaped nut. He prevented himself from falling by grabbing the four-foot high engineer's control stand. Consequently, he suffered injuries to his shoulder, neck and back. McGrath commenced an action for personal injures alleging that defendant was negligent in failing to provide him with a safe work place pursuant to the FELA, and was liable under the Boiler Inspection Act (now the FILA) for requiring him to work with a locomotive that was in a defective condition. The court in finding that plaintiff's locomotive was "in use" under the terms of the Boiler Inspection Act found that locomotive 2013 was neither being serviced in a place of repair, nor operating on Conrail's main line. Rather, locomotive number 2013 was running on the yard track and ready to move into service. In addition, although McGrath was part of a transportation crew, he was also required, as the engineer, to perform certain inspection duties before

moving the locomotive. The court found McGrath's inspection duties were incidental to the task of operating the train as an engineer. *Id.* citing *Rivera v. Union Pac. R. R. Co.,* 868 F. Supp. 294, 301 (D.Colo. 1994). The court further pointed out that a locomotive may still be considered "in use" although it is motionless citing *Crockett v. Long Island R.R.,* 65 F.3d 274, 277 (2nd Cir. 1995) and ruled that McGrath's locomotive was "in use" and the Boiler Inspection Act was applicable. *McGrath,* 136 F.3d at 842.

In the case before this court plaintiff's locomotive was located on track #4 in the yard, preparing to make a double with the hoppers from track #5 to 127 hoppers on the south main lead. After making the coupling, plaintiff would immediately begin to transport his 130-car train to New Castle. It is readily apparent that CSX locomotive 465 was "in use" and preparing to pull rail cars in interstate commerce. It is apparent that plaintiff was the engineer assigned to operate the CSX locomotives to switch out and pull his train. The 127 train cars standing on the main line were on air, had been previously inspected and were ready to go. Plaintiff was in the process of coupling to these 130 cars and preparing to leave the yard. The location of plaintiff's locomotive, on a live yard track #4, and the fact that he would use the locomotives to make a double to the south main and then leave the yard with the plaintiff as the engineer running the locomotives clearly indicated that plaintiff's locomotive was "in use" on June 3, 2004.

Therefore, defendant's motion for partial summary judgment on plaintiff's FLIA claim is denied.

Plaintiff contends that he is entitled to summary judgment under the FLIA because CSX has admitted that there was loose coal and coal dust located on the platform of locomotive 465 on June 3, 2004 and this coal caused plaintiff to slip and fall and as a result, plaintiff suffered several serious injuries that have left him disabled. Plaintiff contends that a violation of the FLIA is actionable under the statutory scheme of the FELA and there is no proof by defendant CSX that plaintiff's accident did not happen in the manner set forth by plaintiff, nor can plaintiff be blamed for his accident, therefore, as a matter of law, CSX is liable for plaintiff's injuries.

This court notes as has long been the law in Pennsylvania, it is the province of the jury to weigh plaintiff's credibility. *Nanty-Glo Boro v. American Surety Co.,* 309 Pa. 236, 238, 163 A. 523, 524 (1932). The Pennsylvania Supreme Court has stated:

"[The] appellant contends that the court below erred in refusing its motion for a new trial, inasmuch as the trial judge, in directing a verdict for plaintiff, took from the jury the opportunity of passing upon the truth of this oral testimony setting forth matters essential to plaintiff's recovery.

"We are of [the] opinion that appellant is clearly right in its contention, and that a new trial must be had. In granting plaintiff's motion for binding instructions, the trial judge assumed the testimony of Carlisle and Estep to be true. This he had no right to do, even though it was uncontradicted. In the words of Justice Sharswood, 'However clear and undisputable may be the proof when it depends upon oral testimony, it is nevertheless the

province of the jury to decide, under instructions from the court, as to the law applicable to the facts, and subject to the salutary power of the court to award a new trial if they should deem the verdict contrary to the weight of the evidence.' *Reel v. Elder,* 62 Pa. 308. This rule is firmly established. *Second National Bank v. Hoffman,* 229 Pa. 429[,78 A. 1102]; *Newman v. Romanelli,* 244 Pa. 147[, 90 A. 556]; *McGlinn Distilling Co. v. Dervin,* 260 Pa. 414[, 103 A. 872]." *Borough of Nanty-Glo,* 309 Pa. at 238, 163 A. at 524.

Instantly, plaintiff's motion relies solely on his own statements through his deposition, his employee's incident report and his statements to his trainmaster Dave Heron. As such self-serving statements are insufficient to support summary judgment in his favor, plaintiff's motion must be denied, and the issue of credibility should rightfully be submitted to a jury.

Accordingly, for the foregoing reasons, the court will deny defendant's motion for partial summary judgment on plaintiff's FLIA claim and plaintiff's motion for partial summary judgment on the issue of liability.

## ORDER

And now, April 30, 2010, after consideration of the cross motions of the defendant and plaintiff for summary judgment, and in accordance with the accompanying opinion of even date herewith, it is ordered and decreed as follows:

(1) Defendant's motion for summary judgment is denied as the court finds, as a matter of law, the locomotive which is the subject of this action was "in use" for

purposes of the plaintiff's claim under the Federal Locomotive Inspection Act, 49 U.C.S. §20701, at the time of the alleged incident, which is the subject of this law suit.

(2) Plaintiff's motion for summary judgment is denied as the issue of whether plaintiff fell as the result of coal and coal dust located on the platform of the locomotive is a question of fact which must be resolved by the jury.