**Gilbert RIVERA, Plaintiff,**

v.

**UNION PACIFIC RAILROAD COMPANY, a corporation, Defendant.**

**Civ. A. No. 93–K–1823.**

United States District Court, D. Colorado.

Nov. 22, 1994.

Brian Berardini, Brown & Berardini, Denver, CO, and Gregory T. Yaeger, Yaeger, Jungbauer, Barczak & Roe, Ltd., Minneapolis, MN, for plaintiff.

David B. Ellis and James R. Webb, Gorsuch, Kirgis, L.L.C., Denver, CO, for defendant.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

This Federal Employers' Liability Act (FELA) case arises from an injury suffered by Gilbert Rivera in the course of his employment as a locomotive engineer. Both parties move for partial summary judgment on the liability and causation issues. I deny both motions.

Rivera claims Union Pacific violated the Boiler Inspection Act (BIA), 45 U.S.C. §§ 22–34 through the use of a locomotive engine in interstate commerce which (1) possessed an artificial condition which posed an unsafe slipping hazard; and (2) failed to comply with federal safety regulations promulgated pursuant to the BIA. He asserts proof that a violation of the BIA has caused or contributed to a worker's injury establishes a railroad's liability as a matter of law in an action brought under the FELA, U.S.C. §§ 51–60. Such a showing also relieves Rivera of any obligation to prove negligence on the part of Union Pacific, which may not assert contributory negligence as a defense.

Union Pacific argues there are genuine issues of material fact with respect to whether it violated the BIA as Rivera alleges. In addition, Union Pacific cross-moves for summary judgment in its favor on the issues of liability and causation. It argues the BIA does not apply to this case because the locomotive upon which Rivera was allegedly injured was not "in use" on Union Pacific's line as required by the BIA. With respect to causation, Union Pacific argues Rivera's alleged injuries were caused solely by his refusal to follow Union Pacific's safety rules.

### I. Standards for Summary Judgment Motion.

Summary judgment is proper where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). "A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages." *Id.* The moving party, however, must demonstrate that he is entitled to a summary judgment beyond a reasonable doubt. *Madison v. Deseret Livestock Co.,* 574 F.2d 1027, 1037 (10th Cir. 1978). The pleadings and documentary evidence are to be construed liberally in the light most favorable to the party opposing the motion. *Harman v. Diversified Medical Investment Corp.,* 488 F.2d 111, 113 (10th Cir.1973). Summary judgment is not appropriate where different ultimate inferences may be properly drawn. *Security National Bank v. Belleville Livestock Commission Co., Inc.,* 619 F.2d 840, 847 (10th Cir.1980).

The party opposing summary judgment may not rest upon mere allegations or denials but "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Lake Hefner Open Space Alliance v. Dole,* 871 F.2d 943, 945 (10th Cir.1989). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude entry of summary judg-

ment." *Florom v. Elliott MFG.*, 867 F.2d 570, 574 (10th Cir.1989). The mere existence of some alleged factual dispute will not defeat a properly supported motion for summary judgment; the standard requires that there be no *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). Whether a factual dispute is material or not is determined by the governing substantive law and a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. at 2510.

■ Finally, "affidavits are not a substitute for trial and summary judgment is improper where an issue turns on credibility." *National Aviation Underwriters v. Altus Flying*, 555 F.2d 778, 784 (10th Cir.1977). "It is particularly wrong to base a summary judgment on the deposition of an interested party on facts ... known only to him—a situation where demeanor evidence might serve as real evidence to persuade a trier of fact to reject his testimony." *Id.; see also id.* at n. 14.

## II. *Facts.*

Rivera is a locomotive engineer for Union Pacific. On June 10, 1991, at approximately 12:30 a.m., he reported for duty at Union Pacific's yard office at its Bailey Yard in North Platte, Nebraska. After receiving his track warrants at approximately 1:00 a.m., Rivera was transported to his train located on the service track.

When Rivera arrived at his train, it consisted of three locomotives connected to a string of cars, and the locomotives were idling. As part of his routine duties, Rivera was required to check each of the locomo-

tives to make sure all of the handbrakes were released and the engines were in the "run" position. He did so by reviewing the engineer's panel with a flashlight. After reviewing the engineer's panel, Rivera turned to walk through the locomotive cab and slipped on an automatic brake valve handle[1] left on the floor of the locomotive. This caused him to fall backwards with his right hand and arm pit landing on the arm of the engineer's chair. Rivera alleges he sustained injury to his neck and right shoulder, and suffered dizziness and headaches as a result of the accident.

When locomotives come into the service department at North Platte they receive necessary maintenance and repairs. Before an engine is released from the service department, Union Pacific's maintenance employees check the cab of the locomotive to make sure it is free of slipping, walking or tripping hazards. Once maintenance and repair is complete, hostlers take Union Pacific's cars to outbound tracks. Hostlers are not considered employees of the service department, and once a hostler takes control of a locomotive, it is no longer considered as being serviced, maintained or repaired by the service department.[2] Rivera testifies that he did not place the brake handle on the floor of the locomotive, and that as a result of normal servicing, the locomotive cab should have been free of any walking or slipping hazard.

## III. *Merits.*

A. *Rivera's motion for partial summary judgment on liability and causation.*

■ The BIA provides:

It shall be unlawful for any carrier to use or permit to be used on its line any locomotive unless said locomotive, its boiler,

---

1. An automatic brake valve handle is the device which permits the engineer to operate the automatic brake. It is normally affixed to the automatic brake mechanism. Some brake handles are bolted into position and are not removable. If removed, however, the handle is stored in a special storage bracket.

2. This is the deposition testimony of Mr. Kent Denkers who was Defendant's Senior Manager of Locomotive Maintenance at North Platte, Nebraska, in June of 1991. He further testified that

a locomotive is considered even further removed from the service department after a train crew boards it, and the track the engine may be on at the time the crew boards the locomotive is not determinative of whether control of the engine has been relinquished by the service department. (Denkers Depo. at 11–12). Similar testimony was offered by Mr. Mark Pruss who is Defendant's current Senior Manager of Locomotive Maintenance in North Platte. (Pruss Depo. at 11–13).

tender, and all parts and appurtenances thereof are in proper condition and safe to operate in the service to which the same are put, that the same may be employed in the active service of such carrier without unnecessary peril to life or limb, and unless said locomotive, its boiler, tender, and all parts and appurtenances thereof have been inspected from time to time in accordance with the provisions of sections 22 to 29 and 31 to 34 of this title and are able to withstand such test or tests as may be prescribed in the rules and regulations hereinafter provided for.

45 U.S.C. § 23. The Act imposes upon railroads engaged in interstate commerce an absolute duty to utilize locomotives in a safe manner. *Id.* §§ 22–23. Where a violation of the BIA is proven in an action brought pursuant to the FELA, the plaintiff need not prove negligence. *O'Donnell v. Elgin, J. & E. R.R.*, 338 U.S. 384, 390, 70 S.Ct. 200, 204, 94 L.Ed. 187 (1949); *Brady v. Terminal R. Ass'n of St. Louis*, 303 U.S. 10, 15, 58 S.Ct. 426, 429, 82 L.Ed. 614 (1938) (the statutory duty imposed upon the carrier is an absolute one, not based upon negligence, and the carrier is not excused by any showing of care). In addition, contributory negligence will not bar recovery where a defendant's violation of the BIA contributed in whole or in part to plaintiff's injury. 45 U.S.C. § 53; *Carter v. Atlanta and St. Andrews Bay R.R.*, 338 U.S. 430, 436, 70 S.Ct. 226, 230, 94 L.Ed. 236 (1949). Finally, the doctrine of assumption of risk was specifically abolished in FELA proceedings as a result of a 1939 amendment to the Act. 45 U.S.C. § 54; *Tiller v. Atlantic Coastline R.R.*, 318 U.S. 54, 58, 63 S.Ct. 444, 446, 87 L.Ed. 610 (1943) ("every vestige of the doctrine of assumption of risk was obliterated from the law by the 1939 amendment").

 The presence of a dangerous object or foreign substance which creates an artificial slipping or tripping hazard on a locomotive can constitute a violation of § 23 of the BIA. In holding the presence of ice on a locomotive tender to be violative of the BIA, the Supreme Court in *Lilly v. Grand Trunk Western R.R.*, 317 U.S. 481, 487–88, 63 S.Ct. 347, 351–52, 87 L.Ed. 411 (1943), stated the Act should be read broadly enough to include conditions other than purely mechanical imperfections which render equipment unsafe to operate, conditions such as the presence of a dangerous object or foreign matter. *See, e.g., Whelin v. Penn Central Co.*, 503 F.2d 886, 890–91 (2d Cir.1974) (ice on locomotive step assembly); *Calabritto v. New York, New Haven and Hartford R.R. Co.*, 287 F.2d 394, 395 (2d Cir.1961) (engine platform made slippery by sand and oil was deemed an unsafe condition within the meaning of 45 U.S.C. § 23).

Rivera contends the presence of an automatic brake valve handle on the floor of Union Pacific's locomotive rendered the locomotive unsafe to operate because it possessed a dangerous slipping or tripping hazard in violation of § 23 of the BIA. Rivera further argues absolute liability is properly imposed upon Union Pacific under the BIA due to its violation of federal regulations promulgated pursuant to the Act. He is correct.

 A rule promulgated by the Interstate Commerce Commission under its authority to establish standards of compliance with the BIA, has the force of law, and, in effect, becomes a part of the BIA. *See Lilly*, 317 U.S. at 488, 63 S.Ct. at 352. The Code of Federal Regulations includes the following safety regulation promulgated pursuant to the BIA:

> (c) Floors of cabs, passageways, and compartments shall be kept free from oil, water, waste or any obstruction that creates a slipping, tripping or fire hazard.

49 C.F.R. § 229.119(c). In *Vaillancourt v. Illinois Central. R.R.*, 791 F.Supp. 734, 738 (N.D.Ill.1992), the court determined that the unsafe placement of an ice chest on a locomotive floor was properly characterized as an obstruction that created a slipping, tripping or fire hazard in violation of 49 C.F.R. § 229.119.

Rivera asserts Defendant's locomotive was not kept free of obstructions creating a slipping or tripping hazard, and the presence of the brake valve handle on the locomotive floor constituted a violation of 49 C.F.R. § 229.119(c). Rivera says a violation of § 229.119(c) provides a second, independent

basis for imposition of absolute liability upon Defendant under the BIA.

Union Pacific claims a material dispute exists concerning the alleged presence of a brake valve handle on the floor of the locomotive cab. Union Pacific suggests Rivera has been inconsistent in his explanation of how this accident occurred. Rivera's theory is that Union Pacific violated the BIA by having an *automatic* brake valve handle on the floor of the locomotive. In response to Union Pacific's first set of interrogatories, however, Rivera stated that he stepped on an *independent* brake valve handle.[3] This distinction is not material to Union Pacific's liability.[4] The presence of either on the floor of the locomotive would provide a basis for Union Pacific's liability.

Union Pacific further contends, however, there is evidence suggesting neither type of brake valve handle was present on the floor of the locomotive. First, Union Pacific states there is only need for one independent brake valve handle and one automatic brake valve handle in a single cab, and that both were securely fastened to the locomotive in question. Thus, there would have been no need for additional handles in the locomotive cab. This argument is vacuous. It simply does not answer the question of whether an additional brake valve handle was nevertheless left on the floor of the cab, especially where the record reflects they were commonly seen laying all over the yard.

 Second, Union Pacific suggests since it had established a routine practice of servicing locomotives in North Platte, including inspection to ensure each locomotive was free of all stumbling hazards, it was not possible for there to have been anything on the floor of the locomotive as Rivera alleges. This *post hoc, ergo propter hoc* reasoning has been rejected by this court. *Elliott v. Union Pacific R.R.*, 863 F.Supp. 1384, 1386–87

(D.Colo.1994). Federal Rule of Evidence 406 relating to "habit and custom" may be used to establish a regular response to a repeated situation, it may not be used to show "character." *Id.* Thus, Defendant may not use the rule to show it was its "habit" to be non-negligent. *Id.*

 The Federal Rules of Civil Procedure require a party opposing summary judgment to "set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). Union Pacific has offered no affirmative evidence or testimony demonstrating that Rivera did not slip upon a brake valve handle as alleged. Union Pacific's response to Rivera's motion for summary judgment in this regard is based on surmise and conjecture and fails to meet its burden under Federal Rule of Civil Procedure 56(e).

This fact notwithstanding, Rivera was this incident's sole eyewitness. Thus, Union Pacific's liability in this case will turn on Rivera's credibility. This is uniquely within the province of the jury. "Affidavits are not a substitute for trial and summary judgment is improper where an issue turns on credibility." *National Aviation Underwriters v. Altus Flying*, 555 F.2d 778, 784 (10th Cir.1977). "It is particularly wrong to base a summary judgment on the deposition of an interested party on facts ... known only to him—a situation where demeanor evidence might serve as real evidence to persuade a trier of fact to reject his testimony." *Id.; see also id.* at n. 14. Because this case turns on the credibility of Rivera, his motion for summary judgment on liability must be denied. *Ipso facto*, his motion for summary judgment with respect to causation is likewise denied.

B. *Union Pacific's cross-motion for summary judgment.*

The BIA provides that "[it] shall be unlawful for any carrier to use or permit to be used on its line any locomotive" which does

---

3. There are two types of brakes on locomotives, independent and automatic. These brakes are operated by two separate brake valve handles. The independent brake valve handle controls the braking system for the locomotives, while the automatic brake valve handle operates the brakes on the entire train as well as the locomotives. (Depo. Denkers at 15–16).

4. In Rivera's supplemental affidavit, he states that he used the term "independent" in his interrogatory response to indicate that the handle was capable of being removed from its position on the automatic brake valve device, and not to suggest that something other than an automatic brake valve or handle was involved.

not meet certain safety standards. 45 U.S.C. § 23. In support of its cross-motion for summary judgment, Union Pacific argues the locomotive unit upon which Rivera was injured was not "in use" within the meaning of the BIA at the time and place of Rivera's injury, and therefore Rivera is not entitled to the protection of the BIA.

In *Angell v. Chesapeake & Ohio Ry.*, the Fourth Circuit addressed the legislative intent behind the "in use" language of the BIA:

Congressional intent and the case law construing this statute clearly excludes those injuries directly resulting from inspection, repair, or servicing of railway equipment located at a maintenance facility.

. . . .

Although the engine may not actually be engaged in moving interstate commerce, the intent of the statute is to exclude from its coverage only such functions as are necessary to detect and correct those defective conditions for which absolute liability will be imposed.

618 F.2d 260, 262 (4th Cir.1980). Union Pacific argues the Tenth Circuit in *Estes v. Southern Pacific Transportation Co.*, 598 F.2d 1195, 1198 (10th Cir.1979) adopted a narrower standard, holding that "used on its line" in the statute was intended to mean used in moving interstate or foreign traffic. I disagree.

In *Estes*, the plaintiff was injured while attempting to open the cab door of a locomotive which was in the defendant's roundhouse area. *Id.* at 1196. The court described the roundhouse involved as an "area of trackage, maintenance pits, shops, offices, and a turntable, where locomotives are inspected, serviced, maintained, and repaired." *Id.*, n. 3. The plaintiff in *Estes* was a "hostler," one who was considered part of the railroad's mechanical department. The court defined "hostler" as "one who takes charge of a railroad locomotive after a run: one who moves and services locomotives in enginehouse or roundhouse territory." *Id.* Based upon these facts, the Tenth Circuit determined the locomotive was not engaged in "moving interstate or foreign traffic," and thus the locomotive was not "in use" within the meaning of the BIA. *Id.* at 1198–99.

■ The facts of this case are clearly distinguishable from those in *Estes*. Union Pacific's Service Department in this case had completed its maintenance, repair, and servicing of the locomotive. Rivera was not a hostler or other service worker but a locomotive engineer assigned by Union Pacific to employ the locomotive in transportation activities. Unlike the locomotive in *Estes* which was situated in the defendant's roundhouse area, the locomotive in this case had left the servicing area, had been coupled to cars and was actually idling. Finally, Rivera was directed by Union Pacific to use the locomotive in active service through track warrants given to Rivera at the start of his shift. Rivera was injured in attempting to do so.

Interpreting *Estes* in light of congressional intent, the Fourth Circuit in *Angell* stated that while it found the reasoning in *Estes* "persuasive," it did not find it applicable to a situation where service and maintenance activities had already been performed and the engine was being uncoupled in preparation for moving it "to a nearby track to pull a train a few hours later." *Angell*, 618 F.2d at 262. This approach to *Estes* applies *a fortiori* to the case at bar. Here, not only had maintenance activities been performed, but the engine was actually attached to other cars and was idling. Thus, the engine was readied for immediate use in moving interstate or foreign traffic and Rivera was given track warrants to this effect.

Union Pacific interprets the phrase "engaged in moving interstate or foreign traffic" as requiring actual motion or movement at the time of a worker's injury. This was not the *Estes* court's interpretation nor is it consistent with the determination of the Supreme Court that a train may still be "in use" within the meaning of the Federal railroad safety statutes, although motionless at the time of a worker's injury. *See Minneapolis, St. Paul & Sault Ste. Marie Ry. v. Goneau*, 269 U.S. 406, 409, 46 S.Ct. 129, 130–31, 70 L.Ed. 335 (1926); *see also Holfester v. Long Island R.R.*, 360 F.2d 369, 372 (2d Cir.1966) (relying on *Goneau* and holding

that a locomotive is still in use within the meaning of the BIA, although motionless).

 Finally, Union Pacific argues the BIA is not applicable in this case because Rivera was involved in "inspecting" the locomotive to ensure that all of the handbrakes had been released and that it was in the "run" position. The Supreme Court, however, has held that the BIA is not rendered inapplicable simply because a worker is injured while performing an inspection of a locomotive. *Brady v. Terminal R.R. Ass'n*, 303 U.S. 10, 16, 58 S.Ct. 426, 429–30, 82 L.Ed. 614 (1938) ("We think that these considerations require the conclusion that one is not to be denied the benefit of the Act because his work was that of inspection for the purpose of discovering defects"). In this case, Rivera was arguably not involved in any "inspection" at all. His review of the engineer's panel before moving the locomotive was intended to ensure that various appliances were in the proper position for movement. It was not a comprehensive inspection designed to discover "defects" on the train. Rivera's examination of the locomotive was purely incidental to his task of operating the train as its engineer.

Because Union Pacific's locomotive was "in use" within the meaning of the BIA, I deny its cross-motion for summary judgment. Union Pacific's cross-motion for summary judgment with respect to causation is likewise denied.

### IV. *Conclusion.*

Both Rivera's motion for partial summary judgment and Union Pacific's cross-motion for summary judgment are DENIED.