Michael McGRATH, Plaintiff,

v.

CONSOLIDATED RAIL CORPORATION, Defendant.

Civil Action No. 95–11185–WGY.

United States District Court, D. Massachusetts.

Oct. 21, 1996.

Steven L. Kantor, John F. Maxwell, Collins, Collins & Kantor, P.C., Buffalo, NY, for plaintiff.

Michael B. Flynn, Leonard F. Zandrow, Jr., Brister & Zandrow, Boston, MA, for defendant.

*MEMORANDUM OF DECISION*

YOUNG, District Judge.

Michael McGrath ("McGrath") commenced this action to recover for injuries he suffered as an employee of Consolidated Rail Corporation ("Conrail"). Conrail filed a motion for

summary judgment arguing that the Federal Boiler Inspection Act (the "Boiler Act"), 49 U.S.C. § 20701, did not apply to the facts of this case and that McGrath could not otherwise establish liability. McGrath filed a cross-motion for summary judgment stating that Conrail's violation of the Boiler Act established liability as matter of law. This Court heard argument on the cross motions for summary judgment on June 25, 1996. At the hearing, this Court ruled from the bench that the Boiler Act applied to this case. This Memorandum of Decision explains that Order.

## I. BACKGROUND

The following facts are undisputed. On March 24, 1994, McGrath reported to work at Conrail's Beacon Park office in Allston, Massachusetts. McGrath was an engineer on a job identified as "WABP–II." Memorandum of Law in Support of the Defendant Consolidated Rail Corporation's Motion for Summary Judgment ("Conrail's Memorandum"), Exhibit 1 at 38. In this position, McGrath was a "shifter," or an engineer for short runs, usually moving trains between local depots. As an engineer, McGrath was responsible not only for operating the train, but also for attaching individual cars to the locomotive. On March 24, 1994, McGrath was assigned locomotive number 2013.

Locomotive number 2013 was in the yard track, 50 feet from the yard office, and was coupled back-to-back with another locomotive. When McGrath approached the locomotives, they were running. *Id.* at 53. McGrath boarded the second locomotive and crossed over to the cabin of locomotive number 2013. Almost immediately upon entering the cabin, McGrath started to walk towards the daily inspection card, a card which tracks necessary daily inspections.

The following facts are sharply disputed. As McGrath walked across the cabin, he stepped on an "acorn-shaped nut" which caused him to lose his balance. McGrath grabbed the four foot high engineer's control stand to prevent himself from falling. Affidavit in Opposition to Defendant's Motion for Summary Judgment and in Support of Plaintiff's Cross–Motion for Summary Judgment ("McGrath's Affidavit"), Exhibit C at 98–99. Although he did not fall, McGrath states that he suffered a wrenching of his neck and entire body.

McGrath commenced this suit against Conrail to recover damages for his injuries under both the Federal Employers' Liability Act (the "Liability Act"), 45 U.S.C. 51, *et seq.* and the Boiler Act.

## II. DISCUSSION

Conrail argues in its motion for summary judgment that the Boiler Act does not apply because locomotive number 2013 was not "in use" at the time McGrath suffered his injury. McGrath counters by stating that locomotive number 2013 was in fact "in use" and that Conrail violated the provisions of the Boiler Act. As a result, McGrath states that he is entitled to summary judgment on the issue of liability.

### A. The Boiler Act

The Boiler Act provides the following:

A railroad carrier may use or allow to be used a locomotive or tender on its railroad line only when the locomotive or tender and its parts and appurtenances—

(1) are in proper condition and safe to operate without unnecessary danger of personal injury;

(2) have been inspected as required under this chapter and regulations prescribed by the Secretary of Transportation under this chapter; and

(3) can withstand every test prescribed by the Secretary under this chapter.

49 U.S.C.A. § 20701 (West 1995). The Boiler Act imposes an absolute duty on railroads to operate locomotives in a safe manner. *Lilly v. Grand Trunk W. R.R. Co.,* 317 U.S. 481, 485, 63 S.Ct. 347, 350–51, 87 L.Ed. 411 (1943). A railroad is therefore liable under the Boiler Act if a locomotive, in violation of either the Boiler Act's provisions or the regulations of the Secretary of Transportation, causes the plaintiff's injuries. *Urie v. Thompson,* 337 U.S. 163, 190–91, 69 S.Ct. 1018, 1034–35, 93 L.Ed. 1282 (1949); *Lilly,*

317 U.S. at 485, 63 S.Ct. at 350–51. Negligence is irrelevant to establish liability under the Boiler Act. *Lilly,* 317 U.S. at 485, 63 S.Ct. at 350–51; *Crockett v. Long Island R.R.,* 65 F.3d 274, 277 (2d Cir.1995).

## B. *The "In Use" Requirement*

■ Liability under the Boiler Act will only exist, however, if the locomotive was "in use" at the time of injury. *Pinkham v. Maine Cent. R.R. Co.,* 874 F.2d 875, 881 (1st Cir.1989). The question of whether a locomotive was "in use" under the Boiler Act is a question of law for the court. *Pinkham,* 874 F.2d at 881. This Court must therefore undertake to determine if locomotive number 2013 was "in use" at the time of McGrath's injury.

■ The scope of the phrase "in use" is somewhat ambiguous. While it is clear that the Boiler Act does not reach injuries that occur on "locomotives being serviced in a place of repair," *id.,* it may reach injuries that occur while the locomotive is motionless, *Brady v. Terminal R.R. Ass'n of St. Louis,* 303 U.S. 10, 13, 58 S.Ct. 426, 428, 82 L.Ed. 614 (1938). *But see Estes v. Southern Pac. Trans. Co.,* 598 F.2d 1195, 1198–99 (10th Cir.1979). At a minimum, "[c]ongressional intent and the case law construing the [Boiler Act] clearly exclude those injuries *directly resulting* from the inspection, repair, or servicing of railroad equipment located at a maintenance facility." *Angell v. Chesapeake & Ohio Ry. Co.,* 618 F.2d 260, 262 (4th Cir.1980) (emphasis added). These injuries are excluded because they occur in the course of functions necessary to discover and correct the unsafe conditions prohibited by the Boiler Act. *See id.*

■ In this case, Conrail argues that locomotive number 2013 was not "in use" at the time of McGrath's injuries because McGrath could not move the locomotive until he conducted certain inspections. Conrail argues that because McGrath was injured prior to these inspections, the locomotive was not "in use" for purposes of the Boiler Act. According to Conrail, this case is analogous to a number of cases in which courts have found the Boiler Act inapplicable to injuries arising from the inspection and maintenance of loco-

motives. *See, e.g., Crockett,* 65 F.3d at 277 (Boiler Act inapplicable when "appearance maintainer" was injured while cleaning windows of train that had been inactive for eight hours, was sitting on a "yard track" and was not to be used until the next day); *Pinkham,* 874 F.2d at 881 (Boiler Act inapplicable when plaintiff injured while conducting maintenance on a locomotive that was taken out of active use, was in the engine house at the time of the accident and was to be sent to a different location for further maintenance); *Steer v. Burlington N. Inc.,* 720 F.2d 975, 976–77 (8th Cir.1983) (Boiler Act inapplicable where plaintiff was inspecting and repairing a locomotive that had been sent to repair area).

McGrath, on the other hand, argues that locomotive number 2013 was in fact "in use" because he was not assigned to conduct maintenance or inspection duties, but rather was preparing the locomotive to leave to the yard track. McGrath states that while he was required to carry out certain inspections, he was to do so in the course of actually using the locomotive to haul freight. McGrath distinguishes the repair and maintenance cases cited by Conrail by pointing out that each involved situations in which (1) a non-transportation department employee was injured, (2) while doing maintenance or repair work, (3) in an area set aside for repairs, and (4) prior to notification that the locomotive was ready for use. In this case, McGrath asserts that he is in a different posture because he was an engineer assigned to operate the locomotive, not repair it.

This Court finds McGrath's argument persuasive. This is not a case where the locomotive was out of service and receiving maintenance. *See Pinkham,* 874 F.2d at 881. Rather, locomotive number 2013 was running on the yard track and ready to move into service. *See Rivera v. Union Pac. R.R. Co.,* 868 F.Supp. 294, 300 (D.Colo.1994) (locomotive "in use" under the Boiler Act where plaintiff was an engineer, not a service worker, locomotive had left service area, was idling and plaintiff was directed to use the locomotive in active service). When McGrath entered the cabin of the locomotive, he did so in order to take the controls for

**98**

operation. McGrath is, therefore, not in the class of plaintiffs who enter a locomotive in order to place it in compliance with the Boiler Act and are thus excluded from its coverage. *See Angell,* 618 F.2d at 262.

Conrail's focus on the inspections that McGrath was to conduct is, in the Court's opinion, misplaced. Conrail assigned McGrath to operate locomotive number 2013 as an engineer. An engineer must conduct safety inspections in the normal course of operating a locomotive. These inspections are "incidental to [the] task of operating the train as an engineer." *Rivera,* 868 F.Supp. at 301. They do not place the locomotive outside the scope of the Boiler Act. *Id.*

In this case, McGrath's injuries were not the direct result of maintenance, inspection or repair. *See Angell,* 618 F.2d at 262. Rather, they occurred in the course of the routine operation of a locomotive. This Court therefore rules that locomotive number 2013 was "in use" at the time of McGrath's injuries for purposes of the Boiler Act.

### C. *Liability*

 Despite the fact that this Court rules that the Boiler Act applies to this case, McGrath is not entitled to summary judgment on the issue of liability. Absolute liability under the Boiler Act requires proof that an unsafe condition, in violation of the Boiler Act, caused the injury. *Lilly,* 317 U.S. at 485, 63 S.Ct. at 350–51. McGrath argues that his injuries were the result of Conrail's violations of 49 C.F.R. § 229.119(c), which provides that:

> Floors of cabs, passageways, and compartments shall be kept free from ... waste or any tripping obstructions that creates slipping, tripping, or fire hazard. Floors shall be properly treated to provide secure footing.

49 C.F.R. § 229.119(c). This provision, if it was in fact violated, may establish liability under the Boiler Act. *See Rivera,* 868 F.Supp. at 298.

The record presented to this Court on the motions for summary judgment reveals that factual disputes exist with respect to whether Conrail violated the Boiler Act and whether that violation caused McGrath's injuries. This Court therefore cannot enter summary judgment for McGrath on the issue of liability.

### III. *CONCLUSION*

For the reasons discussed above this Court ruled that the Boiler Act applied to this case. As such, Conrail's Motion for Summary Judgment was denied and McGrath's Cross–Motion for Partial Summary Judgment was allowed in part and denied in part.