Michael McGRATH, Plaintiff—Appellant,

v.

CONSOLIDATED RAIL CORPORATION,
Defendant—Appellee.

Michael McGRATH, Plaintiff—Appellee,

v.

CONSOLIDATED RAIL CORPORATION,
Defendant—Appellant.

Nos. 97–1063, 97–1064.

United States Court of Appeals,
First Circuit.

Heard Oct. 6, 1997.

Decided Feb. 12, 1998.

Alan D. Voos, with whom Collins, Collins & Kantor, P.C., Buffalo, NY, was on brief, for appellant Michael McGrath.

Leonard F. Zandrow, Jr., with whom Michael B. Flynn and Brister & Zandrow, LLP, Boston, MA, were on brief, for appellee Consolidated Rail Corporation.

Before TORRUELLA, Chief Judge, GODBOLD,* Senior Circuit Judge, and BARBADORO,** District Judge.

TORRUELLA, Chief Judge.

On June 13, 1995, plaintiff-appellant Michael McGrath ("McGrath") commenced this action for personal injuries he suffered as an employee of defendant-appellee Consolidated Rail Corporation ("Conrail"). McGrath alleges that Conrail was negligent in failing to provide him with a safe work place pursuant to the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 *et seq.*, and was liable under the Federal Boiler Inspection Act ("Boiler Act"), 45 U.S.C. § 23,[1] for requiring him to work with a locomotive that

---

* Of the Eleventh Circuit, sitting by designation.

** Of the District of New Hampshire, sitting by designation.

1. Although the Boiler Act was recodified on July 5, 1994, *see* 49 U.S.C. § 20701, we will refer to § 23 because that provision was in effect at the time of McGrath's injury. In addition, in charging the jury, the district court applied § 23.

was in a defective condition. After a jury trial, the district court entered judgment in favor of Conrail on both the negligence and Boiler Act claims.

McGrath appeals on three grounds. Appellant argues that the trial court erred (1) in allowing into evidence McGrath's receipt of collateral source benefits; (2) in submitting to the jury the legal question of whether the locomotive in question was "in use" for purposes of the Boiler Act; and (3) in instructing the jury on the Boiler Act claim. Conrail cross-appeals on the issue of whether the Boiler Act applies to the facts of this case. We find no abuse of discretion with respect to the admission of collateral source evidence. However, the district court erroneously submitted the "in use" question to the jury. As a matter of law, we find that the Boiler Act applies to the instant case. Accordingly, we affirm the jury verdict for the employer on McGrath's negligence theory, but vacate and remand the verdict for Conrail on his Boiler Act claim.

## I. BACKGROUND

On appeal, we summarize the facts in the light most favorable to the verdict-winner, consistent with record support. *See Wainwright Bank & Trust Co. v. Boulos,* 89 F.3d 17, 19 (1st Cir.1996). McGrath was a Conrail engineer employed as a "shifter," or an engineer for short runs, who usually moved trains between local depots. He was responsible not only for operating the train, but also for attaching individual cars to the locomotive. On March 21, 1994, he reported to work at Conrail's Beacon Park office in Allston, Massachusetts. McGrath was the engineer on a job identified by Conrail symbol "WABP–11." The crew that worked WABP–11 consisted of an engineer (McGrath), a conductor, and a brakeman. The train used to perform WABP–11 was made up of at least one locomotive and several railroad cars. On March 21, 1994, the WABP–11 was scheduled to service Conrail's industrial customers in South Boston.

McGrath was assigned to locomotive number 2013, which was coupled back-to-back with another locomotive. McGrath approached both locomotives, which had their engines running, and boarded the second locomotive to cross over into locomotive number 2013. As soon as he entered the cabin of number 2013, McGrath started to walk toward the daily inspection card. In the cabin, McGrath lost his balance when he stepped on an acorn-shaped nut. He prevented himself from falling by grabbing the four-foot high engineer's control stand. Consequently, he suffered injuries to his shoulder, neck and back. One of Conrail's defenses at trial was that McGrath was malingering, i.e., feigning physical disability to avoid work and to continue receiving disability payments. For purposes of rendering its verdict, the jury assumed that the accident described above did occur.

## II. DISCUSSION

### A. Collateral Source Evidence

McGrath argues that the district court committed reversible error by allowing into evidence his collateral sources of income, including disability pension payments under the Railroad Retirement Act and supplemental credit disability insurance payments on his automobile. Under the collateral source rule, the plaintiff need not offset his or her recovery from the defendant by the amount of any benefits received from a source collateral to the defendant. *See Lussier v. Runyon,* 50 F.3d 1103, 1107 (1st Cir.1995). The rule mitigates the danger of the jury finding no liability or reducing a damage award "when it learns that plaintiff's loss is entirely or partially covered." *Moses v. Union Pac. R.R.,* 64 F.3d 413, 416 (8th Cir.1995); *see also Tipton v. Socony Mobil Oil Co.,* 375 U.S. 34, 36–37, 84 S.Ct. 1, 2–3, 11 L.Ed.2d 4 (1963) (per curiam).

However, the rule is not absolute and courts have carved out exceptions to the collateral source doctrine. *See Moses,* 64 F.3d at 416 (allowing collateral source evidence where the plaintiff's case itself has made the existence of such evidence of probative value); *Santa Maria v. Metro–North Commuter R.R.,* 81 F.3d 265, 273 (2d Cir. 1996) (holding collateral source evidence admissible if plaintiff puts financial status at issue); *Simmons v. Hoegh Lines,* 784 F.2d

1234, 1236 (5th Cir.1986) (finding collateral source evidence admissible for limited purpose of proving another matter if little likelihood of prejudice and no strong potential for improper use, and a careful qualifying jury instruction is given). We review the trial court's admission of collateral source evidence for abuse of discretion. *See Blinzler v. Marriott Int'l, Inc.,* 81 F.3d 1148, 1158 (1st Cir.1996).

According to McGrath, the Supreme Court's decision in *Eichel v. New York Cent. R.R. Co.,* 375 U.S. 253, 84 S.Ct. 316, 11 L.Ed.2d 307 (1963) (per curiam), applies to his FELA action and mandates the exclusion of collateral source evidence in such cases. In *Eichel,* the Court held that evidence of disability payments under the Railroad Retirement Act was inadmissible due to the fact that the likelihood of misuse by the jury clearly outweighed the value of such evidence. *See id.* at 255, 84 S.Ct. at 317. In particular, the Supreme Court noted that "[i]nsofar as the evidence bears on the issue of malingering, there will generally be other evidence having more probative value and involving less likelihood of prejudice than the receipt of a disability pension." *Id.*

■ We do not read *Eichel* as requiring the per se exclusion of collateral source evidence in FELA cases. As we noted in *De-Medeiros v. Koehring Co.,* 709 F.2d 734 (1st Cir.1983), the narrower question in *Eichel* was simply "whether or not to uphold the district court's discretionary ruling." 709 F.2d at 741. Indeed, although the Supreme Court decided *Eichel* prior to the enactment of the current Federal Rules of Evidence, the analysis in the *Eichel* decision "does not appear inconsistent with Rule 403." *Savoie v. Otto Candies, Inc.,* 692 F.2d 363, 371 n. 8 (5th Cir.1982). Rule 403 "confer[s] broad discretion upon the district court to weigh unfair prejudice against probative value.". 709 F.2d at 741.

In the instant case, we find that the trial judge did not abuse his discretion in allowing the receipt of collateral source benefits into evidence under a Rule 403 balancing. As its motion in limine to admit the collateral source evidence argues, Conrail offered the evidence of McGrath's disability payments on the issue of McGrath's credibility. Specifically, Conrail presented collateral source evidence to show McGrath's lack of motivation for returning to work. In allowing Conrail to question McGrath about collateral source evidence, the district court, on several occasions, issued cautionary instructions to the jury, advising it to consider the evidence only on the issue of malingering. In one instance where McGrath's tax return was admitted into evidence, the court specifically noted that "any references in there to [collateral] sources of income are not to reduce any compensation he may receive here or to increase it, but only on the issue of his motivation to go back to work...."

■ In oral argument, McGrath's attorney argued that such instructions did not cure the defect because *Eichel* precludes the use of such evidence on the precise issue of malingering. However, we do not believe that the *Eichel* court established a bright-line rule barring the admission of collateral source evidence on the issue of malingering. The Supreme Court simply determined that the district court abused its discretion because the prejudicial impact of the evidence outweighed its probative value. Here, we come to the opposite conclusion. "If there is little likelihood of prejudice and no strong potential for improper use, and a careful qualifying jury instruction is given, then receipt of compensation benefits may be admissible for the limited purpose of proving another matter." *Simmons v. Hoegh Lines,* 784 F.2d 1234, 1236 (5th Cir.1986); *see also Phillips v. Western Co. of N. Am.,* 953 F.2d 923, 930 (5th Cir.1992). We find that the district court properly allowed testimony regarding collateral source income, and thus, we need not reach Conrail's argument that McGrath failed to preserve the issue on appeal.

■ McGrath also objects to several questions at trial about the value of a home he and his wife were planning to build on a lot in Florida. McGrath interjected a timely objection to a specific question about the home's value and the district court sustained it before the witness, McGrath's wife, could respond. After the objection was sustained, Conrail asked no further questions about the

lot or the home. Under these circumstances, we see no reversible error.

## B. Applicability of Boiler Act

█ Conrail cross-appeals the district court's orders denying its motion and renewed motion for judgment as a matter of law. Conrail argues that, as a matter of law, the Boiler Act does not apply to McGrath's circumstances because the locomotive in question was not "in use" for purposes of the Act. The Boiler Act provides in pertinent part:

It shall be unlawful for any carrier *to use or permit to be used on its line* any locomotive unless said locomotive, its boiler, tender, and all parts and appurtenances, thereof are in proper condition and safe to operate in the service to which the same are put, that the same may be employed in the active service of such carrier without unnecessary peril to life or limb, and unless said locomotive, its boiler, tender and all parts and appurtenances thereof have been inspected....

45 U.S.C. § 23 (emphasis added). Whether a locomotive is "in use" under the Act is "a question of law for the trial court to decide and not a question of fact for the jury." *Pinkham v. Maine Cent. R.R. Co.,* 874 F.2d 875, 881 (1st Cir.1989). Absolute liability under the Act arise only if the locomotive in question is "in use." *See Crockett v. Long Island R.R.,* 65 F.3d 274, 277 (2d Cir.1995). We review *de novo* questions of law. *See UNUM Corp. v. United States,* 130 F.3d 501, 502 (1st Cir.1997).

█ "Congressional intent and the case law construing the statute clearly excludes those injuries directly resulting from the inspection, repair and servicing of railroad equipment located at a maintenance facility." *Angell v. Chesapeake and Ohio Ry. Co.,* 618 F.2d 260, 262 (4th Cir.1980). In addressing the "in use" question, this court in *Pinkham* observed that "the determinative factors are the location of the locomotive at the time of the injury and the activity of the injured party...." 874 F.2d at 882. A locomotive may still be considered "in use" although it is motionless. *See Crockett,* 65 F.3d at 277; *see also Brady v. Terminal*

*R.R. Ass'n of St. Louis,* 303 U.S. 10, 13, 58 S.Ct. 426, 428, 82 L.Ed. 614 (1938).

█ The facts of this case do not lend themselves to an easy answer. Locomotive 2013 was neither being serviced in a place of repair, nor operating on Conrail's main line. Instead, the locomotive was idling on a yard track, which is located within the confines of a railroad yard. Yard tracks are used to store, inspect, classify and switch locomotives and railroad cars. In addition, although McGrath was part of a transportation crew, he was also required, as the engineer, to perform certain inspection duties before moving the locomotive.

However, we agree with the district court's resolution of this issue in its order denying Conrail's pre-trial summary judgment motion. The locomotive in question was not being stored on the yard track or awaiting removal to the engine house for repairs. Rather, "locomotive number 2013 was running on the yard track and ready to move into service." *McGrath v. Consolidated Rail Corp.,* 943 F.Supp. 95, 97 (D.Mass.1996). Furthermore, as the district court noted, McGrath's inspection duties were " 'incidental to [the] task of operating the train as an engineer.' " *Id. citing Rivera v. Union Pac. R.R. Co.,* 868 F.Supp. 294, 301 (D.Colo.1994). We hold that the Boiler Act applies to the instant case. Accordingly, we need to address McGrath's grounds for dismissal relating to the Boiler Act.

## C. The Jury Instructions

█ McGrath argues that the district court erred in submitting to the jury the legal question whether the Boiler Act applies to the instant case. We review the trial court's instructions to the jury for abuse of discretion. *See United States v. Shadduck,* 112 F.3d 523, 526 (1st Cir.1997). The district court submitted the following instructions, in pertinent part, to the jury:

Mr. McGrath claims that the Boiler Act was violated and that as a consequence of the violation that was at least one of the causes of injury to him for which he suffered damage. So the first thing you want to consider under the Boiler Act is the

question of whether the Boiler Act applies to him. *The congressional intent and the case law construing the Boiler Act excludes from its coverage those injuries directly resulting from the inspection, repair or servicing of railroad equipment located at a maintenance facility.* These injuries are excluded from the Boiler Act because they occur in the course of functions necessary to discover and correct the unsafe conditions prohibited by the Boiler Act.

So the first question under the Boiler Act is, is Mr. McGrath, and he's got to prove it by a fair preponderance of the evidence, is he excluded under what I've just told you, or is he included, is he able to recover under the Boiler Act?

Transcript at 627–28 (emphasis added). We reiterate that whether a locomotive is "in use" is "a question of law for the trial court to decide and not a question of fact for the jury." *Pinkham*, 874 F.2d at 881. However, the instructions above ask the jury to decide this legal issue.

In instructing the jury, the district court repeats almost verbatim the legal considerations the Fourth Circuit employed in *Angell*. *Compare* jury instructions above (emphasized language) *with* 618 F.2d at 262 ("[c]ongressional intent and the case law construing the statute clearly excludes those injuries directly resulting from the inspection, repair and servicing of railroad equipment located at a maintenance facility"). However, in *Angell*, the court itself resolved the issue rather than remanding it for consideration by a jury. That was the proper course.

In the instant case, the jury rendered a general verdict for Conrail on McGrath's Boiler Act theory. In reaching its verdict, the jury may have decided that, as a threshold matter, the Boiler Act did not apply to the facts of McGrath's case. In that instance, it did not need to reach the issue of Conrail's liability under the Act. Alternatively, the jury may have determined that the Boiler Act did apply but Conrail was not liable under the Act. From the general verdict, we cannot tell whether the jury's verdict was based on an improper determination of the "in use" question. The record does reflect that the jury did consider this threshold

issue. One jury question to the judge was: "Is there any case law that extends the Boiler Act exclusion regarding inspection and repair to inspections and repair outside the maintenance yard?" Under these circumstances, we must vacate the verdict as to the Boiler Act claim and remand. *See Dillard & Sons Constr., Inc. v. Burnup & Sims Comtec, Inc.*, 51 F.3d 910, 916 (10th Cir.1995) ("erroneous submission of a legal question to a jury compels reversal when the jury returns a general verdict, creating uncertainty as to whether the jury relied upon an improper resolution of the legal issue"). Since we remand for new trial on the Boiler Act theory, we need not reach McGrath's last ground for reversal, which argued that the district court erred in instructing the jury on Boiler Act liability.

## III. CONCLUSION

For the foregoing reasons, we *affirm* the jury verdict for appellee on McGrath's negligence claim, but with respect to the jury verdict on the Boiler Act claim, we *vacate* and *remand* to the district court for proceedings in accordance with this opinion.