Ernestina Famania TORO,
et als Plaintiffs

v.

Hon. Angel SANCHEZ,
et. als Defendants

Nos. CIV. 97–1561(GG), CIV. 1660,
97–1824, 97–2077, 97–2139.

United States District Court,
D. Puerto Rico.

March 15, 2001.

Rafael F. Castro Lang, San Juan, PR, for Plaintiffs.

William Reyes Elias, San Juan, PR, for Co-defendant Municipality of Santa Isabel.

Anabelle Rodriguez, Secretary of Justice, Jose Cintron Rodriguez, Federal Litigation Division, Department of Justice, San Juan, for Co-defendant Hon. Angel Sánchez Bermúdez.

## OPINION AND ORDER

GIERBOLINI, Senior District Judge.

Pending before this court is plaintiffs' "Motion *In Limine*" seeking an order from this court disallowing defendants from presenting evidence at trial of welfare benefits received by the plaintiffs after being discharged. Essentially, the plaintiffs claim that such evidence is inadmissible because those benefits (unemployment compensation, food stamps and social security) are not deductible from the amount they may be awarded for back pay. (Docket entry #104). Defendants duly oppose arguing that the court has discretion to determine whether or not evidence of collateral source benefits is admissible for mitigation purposes and/or to attack plaintiffs' credibility, if they also present collateral source evidence to sustain their economic damage claims. (Docket entry #123).

## COLLATERAL SOURCE EVIDENCE

■ Under the collateral source doctrine a plaintiff need not offset his/her recovery from the defendant by the amount of any benefits received from sources independent of those who wronged him/her. See, *England v. Reinauer Transportation Companies, L.P.*, 194 F.3d 265, 273–74 (1st Cir.1999); *McGrath v. Consolidated Rail Corporation*, 136 F.3d 838, 839 (1st Cir.1998) (citing *Lussier v. Runyon*, 50 F.3d 1103, 1107 (1st Cir. 1995)). In other words, this rule generally allows recovery against a wrongdoer for the full amount of damages even though the injured party is also compensated for some or all of the same damages from a different source independent of the tortfeasor. See, *Reilly v. U.S.*, 863 F.2d 149, 165 (1st Cir.1988). Hence, "[t]he collateral source rule is an exception to the general rule that damages in tort should be compensatory only." Joel K. Jacobsen, *The Collateral Source Rule and the Role of the Jury*, 70 Or.L.Rev. 523, 524 (1991). The purpose behind such a rule or doctrine is to lessen the danger of the jury finding no liability or reducing a damage award "'when it learns that plaintiff's loss is entirely or partially covered.'" *Id.* (quoting *Moses v. Union Pac. R.R.*, 64 F.3d 413, 416 (8th Cir.1995)). See also, *Tipton v. Socony Mobil Oil Co.*, 375 U.S. 34, 36–37, 84 S.Ct. 1, 2–3, 11 L.Ed.2d 4 (1963) (*per curiam*).

Traditionally the rule that collateral benefits are not subtracted from the plaintiff's award of damages has been applied to benefits paid under: (1) an insurance policy or by a relief association; (2) employment benefits; (3) gratuitous payments; (4) social legislation benefits such as social security, welfare, pensions; and (4) benefits received under certain retirement acts. The basic argument advanced for the rule's application is that a tort-feasor should not be allowed to escape the consequences of his wrongful act merely because his/her victim has received a benefit from a collateral source which would constitute a windfall to the defendant wrongdoer. Another argument in its favor is that in many instances the plaintiff has paid for these benefits in the form of insurance premiums or concessions in the wages he received because of such fringe benefits. If such considerations are not present and the payments are gratuitous, it is maintained that the maker of the payments did not intend to relieve the tort-feasor of any liability, but rather to aid the plaintiff by doing him/her a favor. It is also argued that the collateral source rule is designed to offset the inability of

ordinary damages to adequately compensate an injured accident victim. See, *Clausen v. Sea–3, Inc.*, 21 F.3d 1181, 1192–94 (1st Cir.1994).

The rule is not absolute and courts have carved out exceptions. See, *McGrath v. Consolidated, supra* at 840-41; *Fitzgerald v. Expressway Sewerage Construction, Inc.*, 177 F.3d 71, 75 (1st Cir.1999) (allowing collateral source evidence if the plaintiff opens the door, it is relevant to some other material issue in the case, its probative value is not outweighed by the danger of unfair prejudice and an immediate prophylactic instruction is given as to the limited use for which it was admitted); *Moses v. Union, supra* at 416 (allowing collateral source evidence where the plaintiff's case itself has made the existence of such evidence of probative value); *Santa Maria v. Metro–North Commuter R.R.*, 81 F.3d 265, 273 (2nd Cir.1996) (holding collateral source evidence admissible if the plaintiff puts financial status at issue); *Simmons v. Hoegh Lines*, 784 F.2d 1234, 1236 (5th Cir.1986) (finding collateral source evidence admissible for the limited purpose of proving another matter if little likelihood of prejudice and no strong potential for improper use, and a careful qualifying jury instruction is given); *DeMedeiros v. Koehring Co.*, 709 F.2d 734 (1st Cir.1983) (allowing evidence that the plaintiff was receiving workers' compensation disability benefits for the limited purpose of proving the plaintiff's motivation in declining an employment opportunity); *Lange v. Missouri Pac. R.R. Co.*, 703 F.2d 322, 324 (8th Cir.1983) (finding that "evidence concerning [the plaintiff's] receipt of workers' compensation benefits was rele-vant to test the credibility of plaintiff's assertion that he had to return to work immediately after the surgery because he had no disability income").

However, whether *vel non* the collateral source rule should be used for mitigation purposes, that is to subtract collateral benefits from back pay awards, in employment discrimination claims under federal law, has been the object of some debate among the circuits.[1] See, *Gaworski v. ITT Commercial Finance Corp.*, 17 F.3d 1104, 1113 (8th Cir.) (citing cases); *cert. denied,* 513 U.S. 946, 115 S.Ct. 355, 130 L.Ed.2d 310 (1994). The Supreme Court has not afforded any solution to the controversy. It has merely held that unemployment compensation "need not be" deducted from a back pay award under the National Labor Relations Act but has not furnished clear guidance as to whether the use of collateral benefits is categorically disallowed or merely entrusted to the court's discretion. See, *Lussier v. Runyon,* 50 F.3d 1103, 1108–09 (1st Cir.1995) *cert. denied* 516 U.S. 815, 116 S.Ct. 69, 133 L.Ed.2d 30 (1995); *Quint v. A.E. Staley Mfg. Co.,* 172 F.3d 1, 17–18 (1st Cir.1999). More to our misfortune, the First Circuit has yet to take a firm position. It has only noted in *dicta* that "we tend to agree with those courts that have held the interplay between collateral benefits and back pay to be a matter within the district court's discretion." *Lussier,* 50 F.3d at 1109.

█ Assuming *arguendo* that district courts passes discretion to determine if and which collateral benefits should be deducted from a back pay award, in the exercise of such discretion we find that in

---

1. Three circuits hold that the district court has the discretion to deduct collateral-source payments, see, e.g., *Orzel v. City of Wauwatosa Fire Dep't,* 697 F.2d 743, 756 (7th Cir. 1983); three circuits hold that the court lacks this discretion, see, e.g., *Craig v. Y & Y Snacks, Inc., 721 F.2d 77, 82–83* (3d Cir.1983); and in four other circuits there are conflicting panel opinions, see, e.g., *Thurman v. Yellow Freight Sys., Inc.,* 90 F.3d 1160, 1171 n. 8 (6th Cir.1996) (acknowledging ongoing intra-circuit rift).

this case neither unemployment compensation, food stamps nor social security payments should be deducted from plaintiffs' back pay awards. First of all, defendants' have failed to point out, and we fail to see, the existence of special circumstances that would lead us to believe that justice would be better served if any windfall should inure to the wrongdoers rather than to the victims. Likewise, as to the social security benefits in particular, it would be unjust to deprive a victim of benefits which he/she has paid for out of his/her own wages.

■ On the other hand, regarding the food stamps' payments, the recipient of this benefit is the family unit and not an individual member of the household in question. See, Chapter II, Article II of the Rules and Regulations of Certification for the Determination of Eligibility of the Participants of the Nutritional Assistance Program of the Administration for the Socio-economic Development of the Family, No. 5639 of June 4, 1997, p. 7. Moreover, the family unit may receive this benefit even if all of it's members are employed and perceiving an income. What prompts entitlement to this benefit is the interplay between total family resources and it's economic needs. *Id.*, at pp. 21–33. Therefore, the fact that the family unit of a plaintiff is currently receiving food stamps is not necessarily related to the plaintiff's termination from employment, ergo, to the issue of mitigation and back pay.

■ Last but not least, we decline the defendants' invitation to treat unemployment compensation similar to interim earnings for purposes of mitigation of damages. It has long been established by the U.S. Supreme Court that "the benefits received by employees under a state unemployment compensation act were plainly not earnings". See, *Marshall Field & Co. v. Labor Board,* 318 U.S. 253, 63 S.Ct. 585, 87 L.Ed. 744 (1943). Furthermore, as it

unequivocally stems from the Statement of Motives of the Puerto Rico Employment Security Act, unemployment compensation benefits are made to carry out an independent social policy and are therefore not to be considered "interim earnings" deductible from back pay awards. See, Puerto Rico Law No. 74 of June 21, 1956, as amended, 29 L.P.R.A. § 701 et seq.

> Economic instability arising from unemployment is a serious threat to the health, security and welfare of the people of Puerto Rico. Unemployment is therefore a matter of general interest and concern which calls for adoption by the Legislature of adequate measures for...lightening the burden it brings about and which inexorably falls upon the unemployed worker and his family. The attainment of social security requires protection against this grave danger to our economic well-being. This objective can be achieved through the... systematic accumulation of funds during periods of employment that will make possible the paying of *benefits* during periods of unemployment, thus holding up the purchasing power of the workers;...and counteracting the serious social consequences of unemployment.... *Id.* (Our emphasis).

Additionally, under the Act, employers must contribute to unemployment funds regardless of whether they wrongfully discharged employees or caused the unemployment. In fact, all employers must pay the unemployment tax. The benefits are not limited to the amount the defendant employer paid into the fund on behalf of the discharged worker. The funds are paid out to unemployed workers by the state agency in charge of the program and it has full control over the funds for it decides how to distribute them, to whom to give them, and for what reasons to distribute them. 29 L.P.R.A. §§ 703 & 704.

Hence, these payments are not made to discharge any liability or obligation of the defendant, but to carry out an independent policy of social betterment for the benefit of the entire state.

In view of the above, we conclude that deducting unemployment compensation will actually make the defendant-employer more than whole. "If an employer who violates the law is allowed to use payments of unemployment compensation to offset its liability, it is put in a better position than an employer who does not violate the law but still pays its unemployment tax to the state." Lee, Thomas W., *Deducting Unemployment Compensation and Ending Employment Dsicrimination: Continuing Conflict*, 43 Emory L.J. 325, 329 (Winter 1994). More so, to allow it to be deducted from an award of back pay would contravene the intent behind the adoption of this welfare benefit.[2]

**WHEREFORE**, for the reasons herein stated, plaintiffs' Motion *In Limine* to exclude evidence of welfare benefits is **GRANTED**. Accordingly, defendants may not use the same for mitigation purposes.

**SO ORDERED.**

---

**2.** We believe that it is the Legislature, and not us, who should determine, by way of appropriate legislation, if a beneficiary of the unemployment program who eventually receives an award of back pay should reimburse either the state program or the employer for the amounts received as unemployment compensation.